BRADLEY D. WOOD, Plaintiff-Appellee, v. NATIONAL LIABILITY AND FIRE INSURANCE COMPANY, Defendant and Third-Party Plaintiff-Appellant (Larry Laux, Third-Party Defendant-Appellee).

Second District   No. 2—00—0974

───────────

Opinion filed September 13, 2001.

James P. McCarthy and Paul Van Lysebettens, both of Gunty & McCarthy, of Chicago, for appellant.

Robert Marc Chemers, Richard M. Waris, Patrick F. Healy, and Scott L. Howie, all of Pretzel & Stouffer, Chtrd., of Chicago, for appellee Larry Laux.

George P. Lindner and Terrance W. Heady, both of Lindner, Speers & Reuland, P.C., of Aurora, for appellee Bradley D. Wood.

JUSTICE BYRNE delivered the opinion of the court:

This is an appeal from an order granting summary judgment to plaintiff, Bradley D. Wood, with respect to the limit of liability insurance extended to him by defendant, National Liability & Fire Insurance Company (National), and from an order dismissing the third-party complaint against Larry Laux, the independent insurance agent who procured the policy. We affirm.

The following facts are undisputed. Plaintiff applied for automobile liability insurance on December 30, 1996, through Laux. Wood's application did not contain an election form to reject the limits of uninsured/underinsured motorist (UM/UIM) coverage. Laux completed the application on Wood's behalf and submitted it to defendant National. National issued Wood a policy of insurance on December 31, 1996, for the period from December 31, 1996, to December 31, 1997, insuring Wood against loss resulting from liability. The bodily injury liability policy limit was $350,000.

National forwarded Wood's application to Transcom, its general agent. Transcom notified Laux that the application was incomplete because it did not include an election form allowing Wood to reject UM/UIM limits higher than those statutorily required. According to Transcom, Wood's UM/UIM limits would automatically be increased to

match the liability limits if the form was not submitted by January 21, 1997. Laux submitted the form on Wood's behalf the following day.

Wood was involved in an automobile accident several months later and made a UM/UIM claim upon his National policy for the policy amount of $350,000. National asserted that, because Wood rejected the higher amount, his UM/UIM policy coverage was reduced to the statutory minimums of $20,000/$40,000. Upon the denial of his claim, Wood filed this action seeking the reformation of the insurance contract to reflect the intended limit of $350,000. National filed a third-party complaint against Laux, alleging that, if it was required to pay Wood the higher limit, then Laux was liable for inappropriately handling the election form.

Wood filed a motion for summary judgment. He claimed that the application process was complete when National accepted his application and issued him a policy. Wood also alleged that, even if the application process was not completed, the election form that rejected the higher limits did not contain an express rejection of those limits and therefore was statutorily ineffective. Pursuant to section 2—615 of the Code of Civil Procedure (735 ILCS 5/2—615 (West 1998)), Laux filed a motion to dismiss the third-party complaint, alleging that the duty to obtain an appropriate rejection of the higher limits was exclusive to the insurer and that Laux, as an independent agent, had no such duty.

The trial court agreed with Wood's argument and entered summary judgment on the complaint for reformation. Because the judgment also absolved Laux of any responsibility for the higher limit, the court granted Laux's motion to dismiss the third-party complaint. National timely appeals.

●1 We begin our analysis by addressing the issue of whether the trial court properly granted the motion for summary judgment and the motion to dismiss. A court should enter summary judgment when the pleadings, depositions, admissions, and affidavits show there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. 735 ILCS 5/2—1005(c) (West 1998). Summary judgment is a drastic remedy that should be granted only when the right of the moving party to relief is free from doubt. *Loyola Academy v. S&S Roof Maintenance, Inc.*, 146 Ill. 2d 263, 271 (1992). The court must construe the evidence strictly against the movant and liberally in favor of the opponent. *Gatlin v. Ruder*, 137 Ill. 2d 284, 293 (1990). Even if the facts are undisputed, if rational persons could draw different inferences from those facts, summary judgment is inappropriate. *Stephen v. Swiatkowski*, 263 Ill. App. 3d 694, 697 (1994).

●2 As with a motion to dismiss, the standard of review of a sum-

mary judgment ruling is *de novo. Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 390 (1993); *Rodgers v. Peoples Gas, Light & Coke Co.*, 315 Ill. App. 3d 340, 347 (2000); *Holloway v. Meyer*, 311 Ill. App. 3d 818, 822 (2000).

National contends that the trial court erred in granting summary judgment because the UM/UIM election form was part of the application process and therefore fulfills the statutory requirement that the applicant be provided a place on the application to reject UM/UIM limits above the statutory minimum. National maintains that the application in this case consists of the four-page document *and* the UM/UIM election form.

•3 National ignores that the linchpin of this case turns on the salient fact that Wood never rejected the limits before the policy of insurance was issued in the manner required by statute. Section 143a—2(1) of the Illinois Insurance Code (Code) (215 ILCS 5/143a—2(1) (West 1998)) requires that the amount of uninsured motorist coverage be included in an insurance policy "in an amount equal to the insured's bodily injury liability limits unless specifically rejected by the insured." The statute further provides:

"(1) *** Each insurance company providing the coverage must provide *applicants* with a brief description of the coverage and advise them of their right to reject the coverage in excess of the [statutory minimum]. ***

(2) *** [E]very *application* for motor vehicle coverage must contain a space for indicating the rejection of additional uninsured motorist coverage. No rejection of that coverage may be effective unless the *applicant* signs or initials the indication of rejection." (Emphasis added.) 215 ILCS 5/143a—2(1), (2) (West 1998).

Section 143a—2 mandates that the insurer providing coverage advise the applicants of their right to reject the coverage in excess of the statutory minimum and that every application must contain a space for the rejection of additional UM/UIM coverage. 215 ILCS 5/143a—2 (West 1998). The Code requires insurance policies to be issued with UM/UIM coverage equal to the liability limits unless there is a specific rejection of this coverage by the applicant. 215 ILCS 5/143a—2 (West 1998). It logically follows that, if the insurer does not obtain the UM/UIM rejection at the time the policy is issued, the UM/UIM limits must equal the bodily injury liability limits.

•4 In this case, National does not dispute that the initial application Wood completed did not contain an election provision for the rejection of additional UM/UIM coverage. Nor does National dispute that the policy of insurance had been issued before the election form was completed. Thus, because Wood had not rejected the limits when

the policy of insurance was issued, the UM/UIM limits, by law, equaled the bodily injury liability limits of the policy. See 215 ILCS 5/143a—2 (West 1998).

Moreover, it is clear that the legislature intended the application process to cease once an insurance policy is issued. In 1990, the legislature modified section 143a—2 so that the word "applicant" replaced the word "insured." Pub. Act 86—1156, eff. August 10, 1990. Before the change, the "insured" had the right to elect or reject UM coverage. In its present form, the statute "leaves no room for doubt as to whom UM coverage must be explained." *Messerly v. State Farm Mutual Automobile Insurance Co.*, 277 Ill. App. 3d 1065, 1069 (1996). We believe that the revision makes it clear that the applicant, not the insured, be provided with a description of the UM coverage and that the applicant be given an opportunity to reject the coverage. The alteration is significant because it is the applicant who needs to know the extent and amount of his or her coverage *before* he or she agrees to enter into a contract of insurance.

On the date the election form was signed, Wood was no longer an applicant because he had been issued a policy. Therefore, the election form could not serve as a valid rejection of the UM/UIM coverage. Because National failed to comply with the mandatory provisions of the Code, the trial court correctly granted summary judgment and reformed the contract. See *Nila v. Hartford Insurance Co. of the Midwest*, 312 Ill. App. 3d 811 (2000) (insurer required to provide UM coverage equal to the amount of bodily injury coverage provided by policy since insured never rejected such additional coverage, regardless of continuous agreement included in policy issued to deceased husband).

National argues that the term "application" is not defined under the Code and this supports its argument that the application process was "ongoing." We fail to see the logic of this argument. No matter how "application" is defined, once the policy was issued, the application process had ended. Regardless, we find nothing that would allow an interpretation of "application" in the manner National suggests.

We further find National's reliance on *Cloninger v. National General Insurance Co.*, 109 Ill. 2d 419 (1985), and *Meadows v. State Farm Mutual Automobile Insurance Co.*, 237 Ill. App. 3d 240 (1992), in support of its argument that an application can be made up of various documents, to be misplaced. The *Cloninger* court did not refer to three separate documents as making up an "application process." The court merely stated that this was the insurance company's argument. More importantly, however, unlike in the present case, neither *Cloninger* nor *Meadows* involved an application process that continued after the applied-for policy had been issued.

We note that National could have provided a separate document accompanying the application form. National could have refrained from issuing the policy until it had all the documentation it desired. Moreover, once the rejection form had been executed, National could have issued an addendum or a new policy reflecting the change in UM/UIM limits. It is clear, however, that National was under no obligation to issue coverage if the application process was incomplete, and, having done so, it is in no position now to claim that the application was not complete until Wood rejected the UM/UIM limits.

Accordingly, we find that the trial court properly granted summary judgment to Wood. We further find that the trial court properly dismissed the complaint against Laux. Based on our decision, we need not address the issue of whether the election form used by National was legally sufficient.

Based on the foregoing, the judgment of the circuit court of Kane County is affirmed.

Affirmed.

McLAREN and GROMETER, JJ., concur.