JOHN ISAACSON, Special Adm'r for the Estate of Michael Crawford, Plaintiff-Appellant, v. COUNTRY MUTUAL INSURANCE COMPANY *et al.*, Defendants-Appellees.

Third District No. 3—01—0419

Opinion filed April 3, 2002.

John W. Billhorn (argued), of Billhorn Law Firm, of Chicago, for appellant.

Daniel K. Russell (argued), of Russell, English, Scoma & Beneke, of Princeton, for appellees.

JUSTICE BRESLIN delivered the opinion of the court:

This declaratory judgment action was brought by plaintiff John Isaacson, special administrator of the estate of Michael Crawford (estate), against defendants Country Mutual Insurance Company and Country Companies Insurance (collectively Country Mutual), alleging that they failed to comply with section 143a—2 of the Illinois Insurance Code (Insurance Code) (215 ILCS 5/143a—2 (West 2000)), which requires that an insurer provide a brief description of uninsured motorist and underinsured motorist (collectively UM) coverage before issuing an applicant a policy of insurance. The court granted Country Mutual's motion for summary judgment, and the estate appealed. We affirm and hold that the statutory requirements of section 143a—2 of the Insurance Code (215 ILCS 5/143a—2 (West 2000)) are met when an insurer provides an applicant for insurance with adequate information to enable him to make an informed decision regarding UM coverage.

## FACTS

In 1995, Ernest Bartoli met with Country Mutual's agent, Crane Schafer, to secure automobile insurance. Bartoli requested uninsured motorist coverage in the amount of $20,000 per person and $40,000 per occurrence (20/40) and rejected underinsured motorist coverage. Because Bartoli failed to sign the rejection section on the application, however, Country Mutual issued Bartoli's policy with UM coverages equal to his bodily injury liability coverage. When he received the policy with the higher UM coverage, Bartoli complained about the higher cost and again requested that the uninsured coverage be reduced to 20/40 and that there be no underinsured coverage. He then signed and submitted a form indicating that he had been offered coverage, that he understood he could purchase such coverage, and that he was rejecting the coverage. Country Mutual reduced the coverage accordingly by issuing an addendum to the policy.

One month later, Country Mutual notified the agent that the rejection had not been received and that it would have to raise Bartoli's UM coverage at the next policy renewal. Thereafter, Bartoli executed a more detailed form of the UM rejection which stated that he understood what UM coverage was, that the premiums and the opportunity to purchase such coverage had been explained to him, that coverage was offered to him, and that he was rejecting the higher coverage. Subsequently, Bartoli renewed his policy at six-month intervals. He also signed two additional rejections.

In June of 1998, Bartoli's 16-year-old daughter was added to the policy. One month later, she was involved in an automobile accident in which her two passengers, Michael Crawford and another person, were killed. Because the other driver carried minimum liability coverage, Crawford's estate filed a complaint against Country Mutual seeking a declaration that Bartoli's rejection did not comply with statutory requirements and that the policy needed to be reformed to include UM coverage at the same amount as the policy's bodily injury liability coverage. Both parties moved for summary judgment.

At a hearing, the transcript from Bartoli's deposition testimony was introduced into evidence. The testimony indicated that he and the agent had a number of discussions regarding UM coverage but that Bartoli could not remember if they discussed it at the time of the initial application or at the time of the renewals. After he received a bill itemizing the costs for the higher UM coverage, however, Bartoli recalled that he had discussed the coverage with the agent and decided not to carry it. Bartoli testified that he rejected the higher coverage in part based on principle. He explained that he objected to being required to carry insurance to cover those drivers who were not adequately insured. According to Bartoli, the decision to carry the lower limits was an informed one and he knew he could have elected to carry higher coverage.

The agent's deposition testimony was also introduced. It indicated that it was his custom and practice to initially offer UM coverage face-to-face, explain the coverage and its cost, and urge its purchase. On several occasions, the agent attempted to persuade Bartoli to carry higher UM coverage and informed him that Country Mutual encouraged the higher coverage. Bartoli adamantly rejected such coverage based on philosophical grounds. After the hearing, the trial court granted Country Mutual's motion and denied the estate's motions. The estate appealed.

## ANALYSIS

At issue is whether Country Mutual provided Bartoli adequate information to enable him to make an informed decision regarding rejection of UM coverage in amounts equal to the policy's bodily injury liability limits.

■ We review a grant of summary judgment *de novo*. *Nila v. Hartford Insurance Co. of the Midwest*, 312 Ill. App. 3d 811, 728 N.E.2d 81 (2000).

The estate argues that Country Mutual failed to comply with the requirements of section 143a—2 of the Insurance Code (215 ILCS 5/143a—2 (West 2000)) by not providing Bartoli with the information

he needed to reject UM coverage and by not properly obtaining the rejections. The estate further contends that a new explanation and rejection of UM coverage was required when Bartoli added his daughter to the policy. Because the statutory requirements were not met, Bartoli's UM coverage must equal his bodily injury liability coverage and the policy must be reformed to reflect the statutorily required higher coverage.

■ Section 143a—2 of the Insurance Code (215 ILCS 5/143a—2(1) (West 2000)) requires that any policy that is issued contain UM coverage in the amount equal to the insured's bodily injury liability limit unless the amount is specifically rejected by the insured. The insurance company providing the coverage is required to give a brief description of UM coverage and advise an applicant of the right to reject coverage in excess of the statutory limits. 215 ILCS 5/143a—2(1) (West 2000). Under the Insurance Code, each insurance application is required to contain a space for the applicant to reject additional UM coverage. 215 ILCS 5/143a—2(2) (West 2000). The rejection is not effective unless an applicant signs or initials the indication of rejection. 215 ILCS 5/143a—2(2) (West 2000). The purpose of section 143a—2 is not only to make certain that drivers are minimally insured but also that the applicant make an informed decision regarding UM coverage. See *Nila*, 312 Ill. App. 3d at 820, 728 N.E.2d at 89.

■ In *Cloninger v. National General Insurance Co.*, 109 Ill. 2d 419, 488 N.E.2d 548 (1985), the court used a four-part test to determine whether an offer of UM coverage was adequate to fully inform an applicant about UM coverage. The test included the following: (1) whether there was commercially reasonable notification if the offer was not made face-to-face; (2) whether the limits of additional coverage were specifically set forth; (3) whether the insured was informed of the nature of the option; and (4) whether the insured was informed that the premiums for additional coverage were relatively modest. See *Cloninger*, 109 Ill. 2d at 425-26, 488 N.E.2d at 550.

■ The record in this case confirms that the *Cloninger* test was satisfied. The testimony of both Bartoli and the agent indicated both that they met face-to-face and corresponded through the mail. The agent testified that his usual custom and practice was to initially offer UM coverage in person, explain the coverage and its cost, and urge its purchase. He attempted on several occasions to persuade Bartoli to carry UM coverage in amounts equal to his liability coverage, but Bartoli refused. Bartoli testified that he and the agent discussed the UM coverage and that he understood the coverage and was philosophically opposed to it. While there is no evidence that the price differential between UM coverage at the higher limits and the cost at the lower

levels was minimal, we are cognizant of the fact that Bartoli must have known the cost differential. We reach this conclusion because he was alerted to the issue when he received his first bill for coverage and complained that it was too high. We therefore hold that the record in this case indicates that Country Mutual fulfilled the statutory requirements of section 143a—2 of the Insurance Code by providing Bartoli adequate information to enable him to make an informed decision regarding UM coverage. Accordingly, we decline to reform the policy.

In reaching our decision, we note that the estate relies on the recent decision in *Wood v. National Liability & Fire Insurance Co.*, 324 Ill. App. 3d 583, 755 N.E.2d 1044 (2001), and asks this court to adopt its reasoning to reverse the trial court and enter summary judgment in its favor. In *Wood*, the insured was issued a policy with uninsured coverage at the statutory minimum and thereafter submitted a rejection of the higher coverage limits. After the insured was involved in an auto accident, he sought to have the policy reformed to include UM coverage in an amount equal to the bodily injury limits. On appeal, the court held that the UM rejection was ineffective because it was tendered after the policy issued. The court reasoned that because the statute specifically referenced "applicant," the legislature intended that an applicant, not an insured, be provided a description of UM coverage and an opportunity to reject the higher limits and that the application process ends once a policy has issued.

We decline to apply the *Wood* reasoning to this case because a critical factual difference exists. In *Wood*, the policy that originally issued reflected the lower UM coverage limits. In the instant case, Bartoli's policy was first issued with UM coverage equal to the bodily injury liability limits and, after he rejected the higher UM coverage, Country Mutual issued a declaration indicating a coverage change and the lowered limits. This rejection procedure falls directly under one of the options offered by the *Wood* court whereby a rejection would conform to the statutory requirements although it was completed after the policy issued. See *Wood*, 324 Ill. App. 3d at 588, 755 N.E.2d at 1048 (determining that the insurance company could issue a new policy or an addendum reflecting the change in UM and be in compliance with the Insurance Code).

We also note that the estate points to the decision in *Nila*, 312 Ill. App. 3d at 820, 728 N.E.2d at 88, in support of its claim that the addition of Bartoli's daughter required a new explanation of UM coverage and a new rejection of the higher limits. In *Nila*, the court found that a wife who survived her husband was not bound by his rejection of higher UM coverage. In reaching its decision, the court noted that the wife had been substituted on the policy as the sole insured and became

solely responsible for the policy decisions, that the insured vehicle had been changed, and that the term at issue was beyond the husband's last policy renewal. See *Nila*, 312 Ill. App. 3d at 820, 728 N.E.2d at 88-89.

Unlike the wife in *Nila*, Bartoli's daughter was not substituted as a named insured and was not responsible for policy decisions. In addition, a new vehicle was not added or substituted for coverage, the accident for which the estate seeks UM coverage at the higher limits was within Bartoli's last renewal period, and the declaration indicating the addition of Bartoli's daughter did not reflect a coverage change but a driver information change. The Insurance Code does not require that a rejection of the higher UM limits be submitted each time a policy is renewed or that every insured covered on a policy individually reject UM coverage. See *Messerly v. State Farm Mutual Automobile Insurance Co.*, 277 Ill. App. 3d 1065, 662 N.E.2d 148 (1996) (holding that a legally sufficient offer made to one insured satisfied the requirements of section 143a—2 of the Insurance Code). Therefore, we decline to find that the addition of Bartoli's daughter required a new explanation and rejection of UM coverage.

For the foregoing reasons, the judgment of the circuit court of Bureau County is affirmed.

Affirmed.

HOLDRIDGE and SLATER, JJ., concur.