VUONG Y. LEE, Special Adm'r of the Estate of Tak Kwon Lee, Deceased, Plaintiff-Appellee, v. JOHN DEERE INSURANCE COMPANY, n/k/a Sentry Select Insurance Company, Defendant-Appellant and Third-Party Plaintiff (Andy W.Y. Lin, a/k/a Waiyip Lin, Defendant; Elite Insurance Agency, Inc., *et al.*, Third-Party Defendants).

First District (1st Division)   No. 1—00—3903

Opinion filed November 4, 2002.

James R. Murray and Eileen Sloan Newlin, both of Tressler, Soderstrom, Maloney & Priess, of Chicago, for appellant.

Michael W. Rathsack, of Chicago (Michael R. Richmond and Michael W. Rathsack, of counsel), for appellee.

JUSTICE COHEN delivered the opinion of the court:

On March 1, 1996, Tak Kwon Lee, a delivery truck operator employed by Asia Distributors, Inc., d/b/a Asia Distributors and Trucking, Inc. (Asia), was fatally injured after being pinned between a private automobile and an Asia delivery truck. The at-fault driver was underinsured. Lee's estate filed an action in chancery seeking a declaration of the limits of underinsured motorist (UIM) coverage potentially available to Lee under a policy then in effect through Asia's insurer, the John Deere Insurance Company, n/k/a Sentry Select Insurance Company (John Deere).

The circuit court granted summary judgment in favor of Lee predicated on its finding that John Deere's use of a separate form for the rejection of increased UIM coverage limits violated section 143a—2(2) of the Illinois Insurance Code (215 ILCS 5/143a—2(2) (West 1992)). The circuit court reformed the policy then in effect, thereby raising Asia's UIM coverage limit from $40,000 per accident to match its bodily injury coverage limit of $1 million per accident.

We hold that the circuit court misapplied section 143a—2(2) and consequently erred in granting summary judgment in favor of Lee. Accordingly, the judgment of the circuit court is reversed.

## BACKGROUND

The record reflects that the president of Asia was Andy W.Y. Lin, a/k/a Waiyip Lin. Lin contacted Elite Insurance Agency, Inc. (Elite), an insurance brokerage firm, by telephone and spoke to Elite employee

Michael Amwoza about obtaining motor vehicle liability insurance for Asia's delivery trucks. On September 2, 1994, based on information provided by Lin, Amwoza completed a "Non-Fleet Transportation Application" form (NFTA form) on Asia's behalf in order to obtain an insurance quote from John Deere. Amwoza testified at his deposition that he informed Lin over the phone that Asia could obtain increased uninsured (UM) and UIM coverage above the statutory minimum of $20,000 per person/$40,000 per accident[1] up to the $1 million liability limit of its policy for an increase in premium. Amwoza explained to Lin the nature of UM/UIM coverage and provided Lin with the approximate cost of obtaining increased coverage. Amwoza further testified that Lin declined the increased UM/UIM coverage limits because "[Lin] wanted the policy as inexpensive as he could get it." Lin, during his deposition, denied that Amwoza had ever explained UM/UIM coverage or offered Asia increased coverage limits.

The record contains a copy of the completed NFTA form indicating that Asia selected coverage limits of $1 million for liability and $20,000 per person/$40,000 per accident for both UM and UIM coverage. Amwoza obtained a quote for placing coverage with John Deere, which Asia chose to accept. Amwoza then submitted on Asia's behalf the completed NFTA form to International Risk Placement, Inc. (IRP), one of John Deere's authorized agents.

On September 8, 1994, John Deere issued a temporary insurance binder to Asia, agreeing to extend coverage effective September 2, 1994. The binder set forth liability and UM/UIM coverage limits of $1 million and $20,000 per person/$40,000 per accident, respectively. Also on September 8, IRP forwarded to Elite for execution by Asia a separate form entitled "John Deere Insurance Company Selection/ Rejection of Uninsured/Underinsured Motorist Coverage Illinois" (selection/rejection form). The selection/rejection form was the only form that John Deere required its Illinois insureds to complete, sign and return to John Deere.[2]

On September 12, 1994, IRP forwarded to Elite the original and a

---

[1] Illinois Safety Responsibility Law (625 ILCS 5/7—203 (West 1992)).

[2] The record contains the affidavit of Christine Dubnicka, manager of John Deere's government industry relations department. Dubnicka avers that John Deere specifically developed the selection/rejection form to comply with section 143a—2(2). On July 14, 1992, in order to confirm compliance, John Deere submitted the selection/rejection form to the Director of the Illinois Department of Insurance (DOI) for review and approval. On July 23, 1992, Dee Caruso, an insurance analyst for the DOI, informed John Deere by letter that the DOI required a minor revision of the selection/rejection form prior to approval. John Deere made the indicated correction and resubmitted the

copy of John Deere policy No. 731286—6694—947 (No. 947), effective September 2, 1994, the date the binder issued. On the date the policy issued, Asia had not yet completed and returned the selection/rejection form. Accordingly, on October 13, 1994, John Deere sent IRP a letter requesting that IRP obtain the completed form from Asia. On October 17, 1994, IRP sent Amwoza a letter advising that the selection/rejection form must be signed and returned by October 28, 1992, in order to avoid cancellation of Asia's policy.

The record contains an executed copy of the selection/rejection form, dated September 16, 1994, and apparently signed "Waiyip Lin." Lin testified in his deposition, however, that the purported signature was not his. The executed form reflected that Asia had rejected increased UM/UIM coverage and instead had requested the "minimum required to meet the Financial Responsibility Laws of the state."

On November 17, 1994, John Deere cancelled policy No. 947 for nonpayment of premiums. On January 20, 1995, Amwoza filed a second NFTA form on Asia's behalf to reinstate coverage with John Deere. The second NFTA form reflects that Asia again requested coverage limits of $1 million for liability and $20,000 per person/$40,000 per accident for both UM and UIM. Amwoza faxed the completed NFTA form to IRP on January 20, 1995. By letter dated January 25, 1995, IRP informed Amwoza that it had bound coverage for Asia effective January 20, 1995, under policy No. 731286—7695—955 (No. 955), and had attached a second selection/rejection form for execution by Asia and return to IRP.

On February 23, 1995, John Deere requested that IRP obtain an executed selection/rejection form from Asia with respect to policy No. 955, informing IRP that the policy would be cancelled if John Deere had not received the executed form by March 16, 1995. IRP forwarded John Deere's notice to Amwoza at Elite on February 28, 1995. Lee conceded before the trial court that Elite subsequently received an executed selection/rejection form with respect to policy No. 955, dated March 7, 1995, and forwarded the form to IRP. IRP then forwarded the March 7 selection/rejection form to John Deere. Lin, however, disputed the authenticity of the signature on the March 7 selection/rejection form, which appeared on its face to have been signed by "Andy Lin." As before, the March 7 selection/rejection form indicated that Asia had rejected increased UI/UIM coverage limits.

In reliance on the executed March 7 selection/rejection form, John Deere renewed coverage and issued "Continuation Policy" No.

---

form. On August 1, 1992, the DOI approved and filed the selection/rejection form without further comment.

731786—7695—963 (No. 963), effective February 1, 1996, until cancelled, without requiring Asia to execute a third selection/rejection form. Because policy No. 963 was a renewal of No. 955, the same $1 million liability and $20,000-per-person/$40,000-per-accident UM and UIM coverage limits applied. 215 ILCS 5/143a—2(2) (West 1992).

Predicated on Asia's rejection of increased coverage limits, John Deere charged Asia an annual premium of $12 per vehicle for the $20,000-per-person/$40,000-per-accident UI/UIM coverage under policy Nos. 947, 955 and 963. The record reflects that had Asia elected to increase its UI/UIM coverage to match its liability limit of $1 million, John Deere would have charged Asia annual UI/UIM premiums of $92 per vehicle.

On June 6, 1996, John Deere cancelled policy No. 963 for nonpayment of premiums. On March 1, 1996, however, while policy No. 963 was still in effect, Asia employee Lee was fatally injured after being pinned between a private automobile and an Asia delivery truck. The at-fault driver, whose Safeway Insurance policy had a $20,000-per-person liability limit, was underinsured.

On April 3, 1996, Lee's estate made a claim for underinsured motorist coverage under renewal policy No. 963, which was in effect on the date of Lee's accident. On April 18, 1996, predicated on the difference between the at-fault driver's $20,000 liability limit and Asia's $40,000-per-accident UIM limit, John Deere offered to pay Lee's estate $20,000 in UIM benefits. Lee's estate declined the offer and filed this declaratory judgment action against John Deere.

Lee moved for summary judgment on the issue of coverage, arguing that John Deere violated section 143a—2(2) by failing to include a space for the applicant's selection or rejection of increased UM/UIM coverage limits on the NFTA form. Consequently, Lee argued, John Deere's use of the separate selection/rejection form also violated section 143a—2(2) and was ineffective. Lee further argued that the trial court should reform the policy in accordance with section 143a—2(1) and increase the $40,000-per-accident UM/UIM limit to match the stated $1 million liability limit.

On April 30, 1999, after hearing oral argument on Lee's motion, the trial court found that Asia's coverage under policy No. 963 was bound before John Deere requested that Asia execute the selection/rejection form. The trial court then ruled:

"THE COURT: I'm entering summary judgment in favor of [Lee]. I'm basing that on [section] 143a—2 [of the Illinois Insurance Code]. There was no signature or initial on the application form to indicate rejection, and I just don't have it in front of me. I'm basing it on the statute.

* * *

The next step for me, the cases talk about me reforming the policy to give the insured the amount of coverage that [the insured] would have had under the bodily injury section.

MS. SCHREIBER: The statute itself speaks to the maximum bodily injury.

THE COURT: Yes, it does. That is how much?

MS. SCHREIBER: One million dollars.

THE COURT: Now, what am I supposed to do—I'll reform the contract, if you will, to give Mr. Lin this one million dollars in coverage, but what's the next step? Because counsel said to me we've got an arbitration issue here.

MS. SCHREIBER: Then you go to arbitration.

THE COURT: Okay, that's not for me.

MS. SCHREIBER: Right.

THE COURT: Thank you."

The trial court did not address the validity or effect of John Deere's use of the selection/rejection form. This appeal followed.

## ANALYSIS

■ ■ "This court reviews the trial court's award of summary judgment *de novo*. [Citation.] Summary judgment is proper where the pleadings and other materials on file, when viewed in the light most favorable to the nonmoving party, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. [Citation.] Moreover, summary judgment is a drastic remedy that should be allowed only when the right of the moving party is clear and free from doubt." *American Service Insurance Co. v. Passarelli*, 323 Ill. App. 3d 587, 589 (2001).

The interpretation of a statute is a question of law properly decided on summary judgment. *In re Estate of Romanowski*, 329 Ill. App. 3d 769, 772-73 (2002). "When construing the meaning of a disputed statute, this court's primary objective is to ascertain and give effect to the intent of the legislature. [Citation.] Legislative intent is best determined by examining the statutory language, which must be given its plain and ordinary meaning." *Lucas v. Lakin*, 175 Ill. 2d 166, 171 (1997). "Where clear and unambiguous, statutory language must be enforced as enacted, and a court may not depart from its plain language by reading into it exceptions, limitations, or conditions not expressed by the legislature. [Citation.] Moreover, where language is express and plain, a court must not search for subtle intentions of the legislature." *People ex rel. Devine v. $30,700.00 United States Currency*, 199 Ill. 2d 142, 150-51 (2002).

Lee argues that John Deere violated section 143a—2(2) by failing to include a space for the applicant's selection or rejection of increased UM/UIM coverage limits on the NFTA form. Lee concludes that John Deere's use of the separate selection/rejection form also violated section 143a—2(2) and was thus ineffective, requiring the trial court to reform policy No. 963 by increasing the stated $40,000-per-accident UM/UIM coverage to match the $1 million bodily injury liability limit.

John Deere responds that the separate selection/rejection form was part of an "ongoing application process" and that providing a space on the selection/rejection form for the applicant's signature satisfied the requirements of section 143a—2(2). John Deere further argues that the DOI's approval of the selection/rejection form renders that form presumptively valid under the statute.

■ A brief analysis exposes both the circuit court's reading of section 143a—2 and the parties' arguments before this court as fundamentally flawed. Section 143a—2 provides in relevant part:

"(1) Additional *uninsured* motor vehicle coverage. No [motor vehicle liability policy] *** shall be renewed or delivered or issued for delivery in this State *** unless *uninsured* motorist coverage as required in Section 143a of this Code is included in an amount equal to the insured's bodily injury liability limits unless specifically rejected by the insured. Each insurance company providing the coverage must provide applicants with a brief description of the coverage and advise them of their right to reject the coverage in excess of the limits set forth in Section 7—203 of the Illinois Vehicle Code. The provisions of this amendatory Act of 1990 apply to policies of insurance applied for after June 30, 1991.

(2) Right of rejection of additional *uninsured* motorist coverage. After June 30, 1991, every application for motor vehicle coverage must contain a space for indicating the rejection of additional *uninsured* motorist coverage. No rejection *of that coverage* may be effective unless the applicant signs or initials the indication of rejection." (Emphasis added.) 215 ILCS 5/143a—2(1), (2) (West 1992).

■ We find section 143a—2 to be unambiguous. As such, the statutory language must be "given its plain and ordinary meaning." *Lucas*, 175 Ill. 2d at 171. An "uninsured" motor vehicle is simply one that is "not insured." Webster's Third New International Dictionary 2499 (1986). An "underinsured" motor vehicle, on the other hand, is defined in section 143a—2(4) as one "for which the sum of the limits of liability under all bodily injury liability insurance policies *** applicable to the driver *** is less than the limits for underinsured coverage provided the insured as defined in the policy at the time of the accident." 215 ILCS 5/143a—2(4) (West 1992).

■ "Uninsured" and "underinsured" are inarguably different terms with particular meanings. It is axiomatic that the legislature intends different results when it uses certain words in one instance and different words in another. *Carver v. Bond/Fayette/Effingham Regional Board of School Trustees*, 146 Ill. 2d 347, 353 (1992). By its plain language, the requirements of section 143a—2(2) with respect to providing space on applications for rejection of additional coverage and imposing a signature requirement for effective rejection apply only to uninsured motorist (UM) coverage. Section 143a—2(2) is devoid of similar limitations with respect to underinsured motorist (UIM) coverage. We refuse to read into a statute a limitation that the legislature has not seen fit to provide. *$30,700.00 United States Currency*, 199 Ill. 2d at 151-52. Because Lee's claim against John Deere was for UIM coverage, the application and signature requirements of section 143a—2(2) were both inapplicable and irrelevant. 215 ILCS 5/143a—2(2) (West 1992). Thus, the trial court misapplied section 143a—2(2) and erred as a matter of law both in granting summary judgment in favor of Lee and in reforming the UIM coverage limits in policy No. 963.

Due to the nature of Lee's claim, the parties' arguments with respect to UM coverage are collateral to the disposition of this appeal. This court will not issue an advisory opinion "merely to set precedent or guide future litigation." *Segers v. Industrial Comm'n*, 191 Ill. 2d 421, 428 (2000). Thus, we decline to address John Deere's arguments with respect to the selection/rejection form or the effect of the DOI's approval of that form.

We are aware of cases failing to distinguish between UM and UIM coverage for purposes of section 143a—2(2). See *Isaacson v. Country Mutual Insurance Co.*, 328 Ill. App. 3d 982, 983, 985 (3d Dist. 2002) (referring to uninsured and underinsured motorist coverage as "collectively UM," then applying the application and signature requirements of section 143a—2(2) to "UM" coverage); *Wood v. National Liability & Fire Insurance Co.*, 324 Ill. App. 3d 583, 586 (2d Dist. 2001) (distinguishing between UM and UIM coverage but applying application and signature requirements of section 143a—2(2) to both). These cases clearly fueled the parties' arguments before this court; however, because these cases are contrary to the plain language of section 143a—2(2), we reject them as a matter of law and decline to adopt their respective analyses of the Illinois Insurance Code.

## CONCLUSION

For the foregoing reasons, the order of the circuit court granting summary judgment in favor of Lee and reforming policy No. 963 is

reversed and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

GORDON, P.J., and McNULTY, J., concur.