ALEX PAJIC, Plaintiff-Appellant, v. OLD REPUBLIC INSURANCE COMPANY, Defendant-Appellee.

First District (6th Division)   No. 1—08—2782

━━━━━━━━

Opinion filed September 30, 2009.

James M. Roche, of Theisen & Roche, Ltd., of Chicago, for appellant.

Timothy J. Reed, of Menges & Molzahn, LLC, of Chicago, for appellee.

JUSTICE McBRIDE delivered the opinion of the court:

This declaratory judgment action was brought by Alex M. Pajic against his employer's insurer, Old Republic Insurance Company (Old Republic), alleging that it failed to comply with section 143a—2 of the Illinois Insurance Code (Insurance Code) (215 ILCS 5/143a—2 (West 2002)), which requires that an insurer provide a brief description of uninsured and underinsured motorist coverage before issuing an applicant a policy of insurance. The judicial remedy for noncompliance is to reform the policy. The circuit court resolved cross-motions for summary judgment in favor of Old Republic. Pajic appeals.

The factual basis for Pajic's claim is unclear. In his complaint, Pajic alleged he was entitled to the limits of his employer's uninsured motorist coverage because he was injured when the semitruck he was driving for his employer on September 30, 2003, was struck by a driver who fled the scene and remains unidentified. This allegation, however, conflicts with an Illinois State Police report which the insurance company attached to its motion for summary judgment. The police report indicates Pajic's truck was the only vehicle involved in the incident that occurred on the Illinois Tollway/I-294 near Northbrook, Illinois, and that Pajic swerved and skidded for 150 feet across two lanes, crossed an embankment and a ditch, struck a guardrail, and was cited for excessive speed (625 ILCS 5/11—601(a) (West 2002)) and not wearing a seatbelt (625 ILCS 5/12—603.1 (West 2002)). On the report form, the officer wrote the names of two eyewitnesses and checked "no" in the section used for recording a "HIT & RUN" incident. In any event, the issue framed in the parties' cross-motions

for summary judgment concerned the insurer's conduct in processing the employer's application for motor vehicle coverage effective July 1, 2003, to July 1, 2004. The policy was a yearly renewal of coverage originally issued on July 1, 1996. Pajic was employed by Roadway Corporation. Roadway Corporation merged with Yellow Corporation before Pajic filed suit in 2007 and became known as Yellow Roadway Corporation (YRC).

Pajic alleged in his complaint and argued in his motion for summary judgment that reformation of the policy was warranted because Old Republic failed to "offer" uninsured (UM) and underinsured motorist (UIM) coverage to his employer "in a commercially reasonable manner," which was the first of the four-part test for a proper "offer" adopted by the supreme court in *Cloninger*, with respect to the 1981 version of section 143a—2 of the Insurance Code. *Cloninger v. National General Insurance Co.*, 109 Ill. 2d 419, 426, 488 N.E.2d 548, 551 (1985); Ill. Rev. Stat. 1981, ch. 73, par. 755a—2(3). Pajic also contended in his motion for summary judgment (but not his complaint) that Old Republic's "offer" was deficient because it did not advise YRC that the optional coverage "was available for a relatively modest premium increase," which was *Cloninger's* fourth prong. *Cloninger*, 109 Ill. 2d at 426, 488 N.E.2d at 551. The supreme court held in *Cloninger* that in the absence of a proper "offer," an applicant for insurance was incapable of making an "intelligent decision" to elect or reject more than the minimum amount of UM or UIM coverage required by law. *Cloninger*, 109 Ill. 2d at 425, 488 N.E.2d at 550. In its response brief and cross-motion for summary judgment, Old Republic countered that the 1990 version of section 143a—2 was in effect when the subject policy was written and that in *DeGrand* the supreme court analyzed the evolution of the statute between 1981 and 1990 and concluded the General Assembly had intentionally removed the "meaningful offer" requirement from section 143a—2 after 1981. *DeGrand v. Motors Insurance Corp.*, 146 Ill. 2d 521, 532, 588 N.E.2d 1074, 1080 (1992); Ill. Rev. Stat., 1990 Supp., ch. 73, par. 755a—2(3); 215 ILCS 5/143a—2 (West 2002). According to the supreme court, under the 1990 law, which is still in effect, UM and UIM limits are automatically set at the same amount as the insured's general bodily injury liability limits, the insurer need only explain the nature of UM and UIM insurance and that the insured has the right to reduce those coverages to as little as $20,000 per person/$40,000 per occurrence, and once the explanation is provided, an insured preferring less UM and UIM coverage has the duty to reject and reduce the limits of those coverages. *DeGrand*, 146 Ill. 2d at 533-34, 588 N.E.2d at 1080. Thus, instead of starting with minimal amounts of UM and UIM coverage

which the insurer must "offer" to increase, motorist coverage written after the 1990 legislation took effect initiates with full UM and UIM coverage which the insured may choose to reduce. Therefore, the supreme court concluded, "The 1990 statute eliminated the need for the [*Cloninger*] four-point test [the supreme court previously adopted with respect to the 1981 statutory scheme]." *DeGrand*, 146 Ill. 2d at 534, 588 N.E.2d at 1080; *Cloninger*, 109 Ill. 2d 419, 488 N.E.2d 548. In addition to arguing that *Cloninger*'s "offer" criteria were superceded by subsequent legislation, Old Republic also argued it complied with its statutory duty under the 1990 Insurance Code to provide YRC with "a brief description of the coverage and *** [the corporation's] right to reject the coverage in excess of the [minimal] limits set forth in Section 7—203 of the Illinois Vehicle Code." 215 ILCS 5/143a—2 (West 1992); *Cloninger*, 109 Ill. 2d 419, 488 N.E.2d 548. Pajic and Old Republic provided the trial judge with copies of correspondence and deposition transcripts, as well as oral arguments, regarding the inception of YRC's motorist coverage effective July 1, 2003, to July 1, 2004. The trial court found that the plain language of the 1990 statute and the factual evidence supported Old Republic's request for summary judgment and the denial of Pajic's motion for summary judgment.

On appeal from that ruling, Pajic contends *DeGrand* is distinguishable and that *Cloninger*'s continued viability is demonstrated by the fact that intermediate appellate courts have continued to cite and follow it. *DeGrand*, 146 Ill. 2d 521, 588 N.E.2d 1074; *Cloninger*, 109 Ill. 2d 419, 488 N.E.2d 548.

Summary judgment is proper where the pleadings, depositions, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2—1005 (West 2006); *Schultz v. Illinois Farmers Insurance Co.*, 387 Ill. App. 3d 622, 625, 901 N.E.2d 957, 960 (2009). Questions of statutory construction and the satisfaction of statutory requirements are questions of law properly decided on a motion for summary judgment. *Schultz*, 387 Ill. App. 3d at 625, 901 N.E.2d at 960. We review *de novo* an order granting summary judgment, without any deference to the judgment of the circuit court. *Schultz*, 387 Ill. App. 3d at 625, 901 N.E.2d at 960.

As suggested above, *Cloninger* was a case of first impression regarding the 1981 version of section 143a—2 of the Insurance Code. *Cloninger*, 109 Ill. 2d at 423, 488 N.E.2d at 549. The plaintiff was a passenger injured in a car crash in 1981 who collected the $16,000 limits of the driver's motorist coverage and then sought additional compensation from his own insurer. *Cloninger*, 109 Ill. 2d at 423, 488 N.E.2d at 549. The statute in effect in 1981 expressly required insurers to "offer" UM and UIM coverage to their clients:

"(1) *Required offer of additional uninsured motor vehicle coverage.* No policy insuring against loss resulting from liability imposed by law for bodily injury or death suffered by any person arising out of the ownership, maintenance or use of a motor vehicle shall be renewed or delivered or issued for delivery in [this] State with respect to any motor vehicle registered or principally garaged in this State unless uninsured motorist coverage as required in Section 143(a) of this Act *is offered* in an amount up to the insured's bodily injury liability limits.

\*\*\*

(3) *Required offer of underinsured motorist coverage.* Any offer made under subsection (1) of this Section shall also include *an offer* of underinsured motorist coverage." (Emphasis added.) Ill. Rev. Stat. 1981, ch. 73, par. 755a—2.

Because the General Assembly had not defined the term "offer," the supreme court considered the legislative debates that led to the passage of section 143a—2(3) and its predecessor statute, which indicated the legislation was motivated by concerns that soaring medical costs often meant injured parties were being only partially compensated for their injuries and that the legislation was proposed " '[on] behalf of the consumer.' " *Cloninger*, 109 Ill. 2d at 424, 488 N.E.2d at 550, quoting 81st Ill. Gen. Assem., House Proceedings, June 20, 1980, at 48 (statements of Representative Epton). A related statute indicated the UIM coverage was optional. *Cloninger*, 109 Ill. 2d at 424, 488 N.E.2d at 550. Given these provisions, the supreme court reasoned that the consumer would need an explanation of UIM insurance in order to make an intelligent decision as to whether to elect or reject the optional insurance. *Cloninger*, 109 Ill. 2d at 425, 488 N.E.2d at 550. The supreme court, therefore, adopted the four-part test being used in Minnesota litigation to determine whether an insurer had made a proper "offer" for optional coverages, including UIM coverage:

"(1) notification must be commercially reasonable if the offer is made in other than face-to-face negotiations; (2) the limits of the optional coverage must be specified and not set forth in general terms; (3) the insured must be intelligibly advised by the insurer of the nature of the option; and (4) the insurer must advise the insured that the optional coverage is available for relatively modest premium increases." *Cloninger*, 109 Ill. 2d at 425-26, 488 N.E.2d at 550, citing *Hastings v. United Pacific Insurance Co.*, 318 N.W.2d 849 (Minn. 1982).

Mr. Cloninger's insurer had mailed him a quotation-application form for automobile coverage and a notice regarding UM/UIM coverage. *Cloninger*, 109 Ill. 2d at 427, 488 N.E.2d at 551. Although the documents detailed the costs and limits of liability insurance, and the

supreme court considered mail delivery to be an effective manner of communicating with Mr. Cloninger, none of the documents explained the nature of UIM coverage. *Cloninger*, 109 Ill. 2d at 428, 488 N.E.2d at 551. Consequently, the supreme court concluded the insurer's communication failed to meet all four parts of the "offer" test. *Cloninger*, 109 Ill. 2d at 428, 488 N.E.2d at 552.

While *Cloninger* was pending, the General Assembly amended the statute effective August 16, 1982, and again expressly required insurers to make certain "offer[s]" to their clients. *DeGrand*, 146 Ill. 2d at 527-28, 588 N.E.2d at 1077, quoting Ill. Rev. Stat. 1983, ch. 73, pars. 755a—2(1), (3), (5). Although the "offer" language remained intact, the 1982 amendment added a new paragraph indicating no policy was to be renewed or issued " 'unless [UIM] coverage is included *** in an amount at least equal to the total amount of [UM] coverage provided in the policy *where such [UM] coverage exceeds the [statutory minimum] set forth in Section 7—203 of the Illinois Vehicle Code.' *" (Emphasis omitted and added.) *DeGrand*, 146 Ill. 2d at 528, 588 N.E.2d at 1077, quoting Ill. Rev. Stat. 1983, ch. 73, par. 755a—2(5). One of the principles of statutory construction is that " 'a material change in the language of an unambiguous statute creates a presumption, although it can be rebutted by evidence of a contrary legislative intent, that the amendment was intended to change the law.' " *DeGrand*, 146 Ill. 2d at 526, 588 N.E.2d at 1077, quoting *State of Illinois v. Mikusch*, 138 Ill. 2d 242, 252, 562 N.E.2d 168, 172 (1990). Therefore, in *DeGrand*, it was argued that the 1982 law provided for the automatic inclusion of certain coverage, but only consumers who purchased UM coverage greater than the statutory minimum were automatically provided with UIM coverage in the same amount. *DeGrand*, 146 Ill. 2d at 529, 588 N.E.2d at 1078. In other words, the 1982 law contained a loophole through which a driver who elected *minimum* UM coverage was not entitled to an "offer" of *any* UIM coverage or to its automatic inclusion in the policy. *DeGrand*, 146 Ill. 2d at 524, 588 N.E.2d at 1076. The case reached the supreme court in 1991, after *Cloninger* was decided in 1985 and after the legislature again changed the statutory scheme in 1990, dropping the "[r]equired offer" language altogether. *DeGrand*, 146 Ill. 2d at 530, 588 N.E.2d at 1079, citing Ill. Rev. Stat., 1990 Supp., ch. 73, par. 755a—2(1). The 1990 version of the law provided:

> "(1) Additional uninsured motor vehicle coverage. No policy insuring against loss *** for bodily injury *** arising out of the *** use of a motor vehicle shall be renewed *** unless uninsured motorist coverage as required in Section 143a of this Code is included in an amount equal to the insured's bodily injury liability limits unless specifically rejected by the insured. Each insurance company

\*\*\* must provide applicants with a brief description of the coverage and advise them of their right to reject the coverage in excess of the limits set forth in Section 7—203 of the Illinois Vehicle Code. The provisions of this amendatory Act of 1990 apply to policies of insurance applied for after June 30, 1991.

(2) Right of rejection of additional uninsured motorist coverage. After June 30, 1991, every application for motor vehicle coverage must contain a space for indicating the rejection of additional uninsured motorist coverage. No rejection of that coverage may be effective unless the applicant signs or initials the indication of rejection." Ill. Rev. Stat., 1990 Supp., ch. 73, par. 755a—2(1).

The supreme court addressed the seemingly implausible interpretation of the 1982 law by first consulting the 1982 legislative history, which it found unhelpful. *DeGrand*, 146 Ill. 2d at 534, 588 N.E.2d at 1080-81. The supreme court then searched for the intent behind the 1982 statute by studying the differences in the 1981, 1982, and 1990 statutory schemes. *DeGrand*, 146 Ill. 2d at 526-32, 588 N.E.2d at 1077-79. So although the 1990 statute was not at issue in *DeGrand*, the supreme court scrutinized its wording and focused directly on the disappearance of the "offer" language in that version of the law. *DeGrand*, 146 Ill. 2d at 530-32, 588 N.E.2d at 1079-80.

"In reading the statute and its amendments, this court finds that when the legislature enacted the change to the 1981 statutory scheme in 1982, the legislature acted rationally with full knowledge of all previous enactments as well as decisions. Furthermore, this court finds that the material change in the 1982 statute created a presumption that the amendment was intended to change the law regarding 'required offer.' The 1990 statute supports that presumption. We hold that the insurer in this case was not required to make a specific offer of [UIM] coverage. \*\*\*

Plaintiffs argue that the policy behind the statute is that consumers must be made aware of this important type of coverage. In their argument, they state that the meaningful offer has been relocated. However, our reading of the statute and its subsequent amendments does not permit this interpretation. The 1990 statute provides proof that the insured must be made aware of the coverage but the 'meaningful offer' requirement has intentionally been removed. The 1990 statute significantly coincides with the legislative scheme to protect the insured/consumer by making [UM and UIM] coverage equal and mandatory. We cannot find where the meaningful offer requirement has been 'relocated.' " *DeGrand*, 146 Ill. 2d at 531-32, 588 N.E.2d at 1079-80.

The supreme court also considered the appellant's contention that *Cloninger*'s four-part test continued to be viable after 1981. *DeGrand*,

146 Ill. 2d at 532-34, 588 N.E.2d at 1079-80; *Cloninger*, 109 Ill. 2d 419, 488 N.E.2d 548. Of particular relevance here is the supreme court's explicit conclusion that *Cloninger*'s meaningful offer test had become outmoded:

"Although the holding in *Cloninger* dealt with the 1981 version of the statute, part of that holding is still viable, but not the meaningful offer test. The 1990 statute provides an explanation of coverage by the insurer as follows:

'Each insurance company providing the coverage must provide applicants with a brief description of the coverage and advise them of their right to reject the coverage in excess of the limits set forth in Section 7—203 of The Illinois Vehicle Code.' Ill. Rev. Stat., 1990 Supp., ch. 73, par. 755a—2(1).

We note that since *Cloninger*, the legislature has avoided the use of the term 'required offer' in the statute. In fact, we find that the 1990 statute places the burden on the insured to reject and subsequently to reduce the uninsured motorist coverage which is automatically set at an amount equal to the bodily injury liability. No longer is the insurer responsible to make an offer, but rather it is the insured's duty to reduce the uninsured motorist coverage. Furthermore, whatever uninsured motorist coverage the insured elects, underinsured motorist coverage will be set, mandatorily, at the uninsured motorist coverage level. At that point, it is the duty of the insurer to *explain* the coverage and nothing more. The 1990 statute eliminated the need for the [Minnesota courts'] four-point test for determining whether the offer was made in a commercially reasonable manner, [the test we] adopted in *Cloninger*." *DeGrand*, 146 Ill. 2d at 533-34, 588 N.E.2d at 1080.

*DeGrand* was decided in 1992 and has not been limited or criticized in any subsequent opinion. *DeGrand*, 146 Ill. 2d 521, 588 N.E.2d 1074.

In Pajic's case, the trial judge looked to the plain language of the 1990 statute requiring a "brief description" rather than an "offer," considered *DeGrand*'s analysis of the 1990 law, and concluded that Old Republic was not required to make the "offer" to Pajic's employer that Pajic had alleged in his complaint. *DeGrand*, 146 Ill. 2d 521, 588 N.E.2d 1074.

Pajic contends the judge misconstrued the law and that *DeGrand* is not controlling here for two reasons. First, the opinion concerns UIM coverage, not the UM coverage at issue here, because the specific question posed in *DeGrand* was " 'Does Illinois law require insurers to offer underinsured motorist coverage (and, if so, in what amount) to automobile purchasers who opt for uninsured motorist coverage at the minimum statutory level?' " *DeGrand*, 146 Ill. 2d at 522, 588 N.E.2d at 1075. We do not find this distinction meaningful because as

Pajic's primary case on appeal indicates, the laws requiring UM and UIM coverage are part of the same statutory scheme and the analysis employed in UIM cases has been applied in UM cases. *Nila v. Hartford Insurance Co. of the Midwest*, 312 Ill. App. 3d 811, 819, 728 N.E.2d 81, 87 (2000) (the rationale of UIM cases has been applied to UM cases, as both coverages are part of the same statutory scheme); *Schultz*, 387 Ill. App. 3d at 626, 901 N.E.2d at 960 (UIM and UM coverage are inextricably linked in the statute). If we were to reject *DeGrand* on this technical ground, we would also have to reject other cases Pajic relies upon. Pajic's second distinction is that because *DeGrand* concerned the 1982 version of the statute, anything the supreme court said about the 1990 version was *obiter dictum*. *Obiter dictum* is a statement of law made by a court for purposes of illustration, argument, or analogy, or it is a remark uttered "by the way" on some collateral point not directly concerning the question before the court. *Cates v. Cates*, 156 Ill. 2d 76, 80, 619 N.E.2d 715, 717 (1993); Black's Law Dictionary 1100 (7th ed. 1999). *Obiter dictum* is a statement that " 'could have been deleted without seriously impairing the analytical foundations of the holding *** [and] being peripheral, [it] may not have received the full and careful consideration of the court that uttered it.' " *United States v. Crawley*, 837 F.2d 291, 292 (1988), quoting *Sarnoff v. American Home Products Corp.*, 798 F.2d 1075, 1084 (7th Cir. 1986). "On the other hand, an expression of opinion upon a point in a case argued by counsel and deliberately passed upon by the court, though not essential to the disposition of the cause, if *dictum*, is judicial *dictum*." *Cates*, 156 Ill. 2d at 80, 619 N.E.2d at 717. Judicial *dictum* "is entitled to much weight, and should be followed unless found to be erroneous." *Cates*, 156 Ill. 2d at 80, 619 N.E.2d at 717. We do not consider *DeGrand*'s analysis of the 1990 statute and the relevance of *Cloninger*'s four-part test under the current statutory scheme to be *obiter dictum*. In the absence of sufficient legislative history specific to the 1982 amendments, the supreme court scrutinized the terms of section 143a—2 as it evolved between 1981 and 1990 and emphasized: "It is from that entire history that we reached the result in this opinion." *DeGrand*, 146 Ill. 2d at 534, 588 N.E.2d at 1081. The supreme court's statements about the 1990 law were more than passing remarks on a collateral point, they were the analytical foundation for its judgment. Furthermore, the supreme court emphatically rejected the appellant's contention that the "meaningful offer" requirement had simply been relocated within the statute and that *Cloninger*'s four-part test of a proper "offer" remained relevant in the post-1981 environment. *Cloninger*, 109 Ill. 2d 419, 488 N.E.2d 548. The supreme court gave full and careful consideration to the points

being raised here. We also reiterate that *DeGrand* is a supreme court opinion which has not been subsequently contradicted. This is significant because "[e]ven *obiter dictum* of a court of last resort can be tantamount to a decision and therefore binding in the absence of a contrary decision of that court." *Cates*, 156 Ill. 2d at 80, 619 N.E.2d at 717. For all these reasons, Pajic's criticism of *DeGrand* is unpersuasive. The legal premise of the complaint he filed in 2007 was rejected by the supreme court in 1992.

We also conclude that Pajic's reliance on *Nila* and *Isaacson* is misplaced. *Nila*, 312 Ill. App. 3d 811, 728 N.E.2d 81; *Isaacson v. Country Mutual Insurance Co.*, 328 Ill. App. 3d 982, 767 N.E.2d 862 (2002). Pajic cites these cases as recent indications the *Cloninger* test is still relevant. In *Nila*, with respect to coverage renewed in 1996, the Second District cited *Cloninger* merely for its general statements about the purpose of the statute. *Nila*, 312 Ill. App. 3d at 818-21, 728 N.E.2d at 87-89 (referring to *Cloninger* and then stating, "Keeping the legislative intent of the statute in mind, we turn to the language of the statute itself"; and later concluding, "We believe that [our interpretation] comports with the intent behind the uninsured motorist statute as set out in *Cloninger*"). The Second District did not revive the old statutory language or apply *Cloninger*'s four-part test in *Nila*. *Nila*, 312 Ill. App. 3d at 818-21, 728 N.E.2d at 87-89. Two years later, however, in *Isaacson*, the Third District cited *Nila* and *Cloninger* and employed the four-part criteria with respect to coverage initiated in 1995. *Isaacson*, 328 Ill. App. 3d at 985, 767 N.E.2d at 865 ("The record in this case confirms that the *Cloninger* test was satisfied"). Nevertheless, because the Third District did so without distinguishing *DeGrand*, *Isaacson* is not a persuasive endorsement of the four-part test in the current statutory environment. Furthermore, sitting in Illinois' First District, we are not bound to follow the opinions of the Second or Third District, and instead must adhere to the opinions of the higher court.

The record reflects that the trial judge considered the parties' arguments and ultimately followed the current version of the statute at issue. We conclude that the trial judge properly interpreted the law and correctly determined that Old Republic was under no obligation to come within the *Cloninger* test.

In addition, the record supports Old Republic's contention that it complied with its statutory duty under the relevant version of the law to provide "a brief description of the coverage and *** [the corporation's] right to reject the coverage in excess of the [minimal] limits set forth in Section 7—203 of The Illinois Vehicle Code." 215 ILCS 5/143a—2 (West 1992). The record shows that YRC is a multistate

trucking company which began purchasing insurance coverage from Old Republic in 1996. For the subject year, Old Republic gave YRC a written insurance contract and a three-ring binder entitled "OLD REPUBLIC Uninsured/Underinsured Selection/Rejection Rules and Forms." The binder included a tab for each State followed by pages containing specific information about the "options available to [YRC] for *** uninsured motorists, underinsured motorists, medical payments, no-fault and miscellaneous coverages in the described states(s)."

There were three pages within the Illinois tab: the first page described the available coverages (medical payments, UM bodily injury, UM property damage, and UIM bodily injury, and specified that no-fault and UIM property damage were not offered in Illinois), and the latter two pages were forms for YRC to complete in order to select or reject from the available options. For instance, with respect to medical payments coverage in Illinois, the first page specified: "Medical Payments Coverage may be rejected or selected." One of the subsequent forms which YRC was to fill in specified:

"—Complete the Medical Payments Coverage option desired:
___ I REJECT Medical Payments Coverage.
___ I SELECT Medical Payments Coverage (circle one):
Basic Limit $500; or Optional Limit $1,000 $2,000 $5,000."

Similarly, with respect to UM insurance the first page of the Illinois tab indicated in relevant part:
### "Uninsured Motorists Bodily Injury Coverage
—Uninsured Motorists Bodily Injury Coverage provides for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom.

—Uninsured Motorists Bodily Injury Coverage must be provided for all vehicles designed for use on public highways and required to be registered or principally garaged in Illinois."

On the accompanying form, YRC was to choose from various limits of UM and UIM coverage, ranging from "basic" limits as little as $20,000 per person/$40,000 per accident, up to seven different "optional" limits ranging from as low as $25,000/$50,000 to as high as $1 million/$1 million. The form continued:

"—If Limit(s) selected are less than the policy's Liability Coverage Limit(s) complete the following confirmation:
___ I REJECT Uninsured Motorist Bodily Injury Coverage and Underinsured Motorists Bodily Injury Coverage at Limit(s) equal to the policy's Bodily Injury Liability Coverage Limit(s).

—The Limit(s) selected apply *separately* to Uninsured Motorists Bodily Injury Coverage and Underinsured Motorists Bodily Injury Coverage." (Emphasis in original.)

YRC completed this form by indicating it was rejecting medical payments coverage, circling the "basic" (minimal) amount of UM and UIM coverages, and marking the section confirming that it was rejecting UM and UIM coverage equal to the policy's bodily injury liability coverage limits. After YRC filled in the forms for the various states, it removed the forms from the binder and gave them to Old Republic for processing. Old Republic subsequently returned photocopies of the completed forms to YRC for insertion into its tabbed binder.

In his appellate reply brief, Pajic contends the explanation of UM coverage which Old Republic gave to YRC was both "vague and ambiguous" and was so poorly worded "it's as if no explanation was provided [at] all." He contends, for instance, that instead of using the word "protection" in the description of UM coverage which we quoted above, the insurer should have used the phrase "damages for bodily injury" so that the document stated: "Uninsured Motorist Bodily Injury Coverage provides for the *damages for bodily injury* of persons insured thereunder who are legally entitled to recover damages *** because of bodily injury ***." (Emphasis added.) We note that Old Republic's explanation of UM coverage tracked the language of the Illinois statute requiring such coverage. Section 143a of the Insurance Code stated in relevant part:

> "Uninsured and hit and run motor vehicle coverage. (1) No policy *** shall be renewed, delivered or issued for delivery in this State unless coverage is provided *** for the protection of persons insured thereunder who are legally entitled to recover damages from owners or operators of uninsured motor vehicles and hit-and-run motor vehicles because of bodily injury, sickness or disease, including death, resulting therefrom." 215 ILCS 5/143a(1) (West 2002).

Pajic neglects to cite and we are unable to find any document or transcript in the record on appeal which indicates Pajic made this argument in the trial court. Therefore, it appears Pajic is asking this court of review to reverse the trial court's decision on grounds which the trial court was never asked to consider. Our adversarial system does not allow Pajic to introduce new arguments so late in the proceedings. Arguments which are raised for the first time on appeal are waived. *In re Marriage of Holthaus*, 387 Ill. App. 3d 367, 377, 899 N.E.2d 355, 364 (2008). Even if the argument was made in the trial court, by presenting it in his reply brief, rather than his initial brief on appeal, Pajic prevented Old Republic from responding to it and violated the supreme court rule that new arguments shall not be of-

fered in a reply brief. *Holthaus*, 387 Ill. App. 3d at 379, 899 N.E.2d at 365, citing 210 Ill. 2d R. 341(h)(7) ("Points not argued [in the opening brief] are waived and shall not be raised in the reply brief ***"). Because the argument is untimely, we decline to decide whether it has any merit.

Thus, our *de novo* review of the law and record on appeal leads us to conclude that there was no issue as to any material fact and that Old Republic was entitled to summary judgment as a matter of law. Accordingly, we affirm the judgment of the circuit court.

Affirmed.

CAHILL, P.J., and R.E. GORDON, J., concur.