The Chancellor.
On the nineteenth of July, 1852, Charles Cotton, being seized in fee of a house and lot in Southampton, mortgaged the same to secure the payment of $225 to Isaac Hilliard. The mortgage was subsequently assigned to Andrew Fort.
On the first of March, 1856, Cotton died, and letters of administration upon his estate were granted to Shinn, the complainant. The personal estate proving insufficient to pay the debts, the administrator obtained an order of the Orphans Court to sell the real estate of the decedent for the payment of debts. In pursuance of this order, the mortgaged premises were advertised for sale by the administrator, and were struck off and sold to John Johnson for $365.52. So far as appears by the evidence, neither the advertisement, the conditions of sale, the report of sale by the administrator, or the decree of confirmation, contain any reference whatever to the encumbrance upon the premises. On the thirteenth of November, 1856, a deed, in pursuance of the sale, was executed by the administrator to the purchaser. On the twenty-third of March, 1857, the title became vested in Thomas Kealy. Kealy died on the twentieth of June, 1858. The land was sold, under an order of the Orphans Court, by his administratrix for the payment of debts, and on the twenty-first of May, 1860, the title became vested in Budd, the defendant.
On the thirtieth of March, 1857, the complainant paid to *236 Andrew Fort, the assignee of the mortgage, $112, the balance of principal and interest remaining due and unpaid upon the mortgage debt, and took his receipt therefor upon the bond. The bill is filed to enforce the encumbrance of the mortgage against the land in the hands of the defendant. The complainant asks to be substituted in the place of the assignee of the mortgage, and to be subrogated to his rights. The ground upon which the relief is asked is, that the purchaser at the administrator’s sale took his title subject to the mortgage; that the sum due upon the mortgage was deducted from the amount of the purchase money, and that the mortgage debt was paid by the complainant, not as administrator, out of funds belonging to the estate of Cotton, but out of his own funds.
The complainant’s case, assuming it to be fully sustained by evidence, is briefly this: As administrator of the estate of Cotton, he sold the real estate of the intestate, by order of the Orphans Court, for the payment of debts. The property was sold for $365.52, the consideration expressed in the deed of .conveyance, this constituting the entire value of the land clear of encumbrances. The amount due upon the mortgage, $112, was not paid by the purchaser. After the sale, the mortgage debt was paid by the complainant to the holder of the mortgage, who endorsed upon the bond a receipt in full of the debt. There was no assignment of the •bond and mortgage. The estate of Cotton was settled as if the purchase money had been paid in full by the purchaser. It was in fact advanced by the complainant out of his own funds. The mortgage remains in his hands uncancelled of record. This is stating the case most favorably for the complainant. He now comes into court seeking to enforce the .mortgage against those claiming under his own grantee. He does not claim to hold the mortgage by assignment; but he asks, by subrogation, to be substituted in the place of the mortgagee,- and to succeed to his rights.
Subrogation as a matter of right, as it exists in the civil law, from which the term has been borrowed and adopted in *237 our own, is never applied in aid of a more volunteer. Legal substitution into the rights of a creditor, for the benefit of a third person, takes place only for his benefit, who being himself a creditor, satisfies the lien of a prior creditor, or for the benefit of a purchaser who extinguishes the encumbrances upon his estate, or of a co-obligor or surety who discharges the debt, or of an heir who pays the debts of the succession. Code Napoleon, Book 3, tit. 3, art. 1251; Civil Code of Louisiana, art. 2157; 1 Pothier on Oblig., Part 3, ch. 1, art. 6, § 2.
“We are ignorant,” say the Supremo Court of Louisiana, “ of any law which gives to the party who furnishes money for the payment of a debt the rights of the creditor who is thus paid. The legal claim alone belongs not to all who pay a debt, but only to him who, being bound for it, discharges it.” Nolte & Co. v. Their Creditors, 9 Martin 602; Curtis v. Kitchen, 8 Martin 706; Cox v. Baldwin, 1 Miller’s Louis. R. 147.
The principle of legal substitution, as adopted and applied in our system of equity, has, it is believed, been rigidly restrained within these limits.
In The Bank of the United States v. Winston’s Executors, 2 Brocken. R. 254, Chief Justice Marshall said: “ If a security not assignable be discharged by a surety whom it binds, equity keeps it in force in his favor, and puts such surety in the place of the original creditor. But I think there is no case in which this has been done in favor of a person, not bound by the original security, who discharges the debt as a volunteer.”
In Gadsden v. Brown, 1 Speer’s Eq. R. 41, Johnson, Chancellor, says: The doctrine of subrogation is a pure unmixed equity, and from its very nature could not have been intended for the relief of those who were in a condition and at liberty to elect whether they would or would not be bound, and so far as I have been enabled to learn its history, it never has been so applied. It has been directed exclusively to the relief of those who were already bound, and who could not *238 but choose to abide the penalty. I have seen no case in which a stranger, who was in a condition to make terms for himself, and demand any security he might require, has been protected by the principle.
In Sanford v. McLean, 3 Paige 122, Chancellor Walworth states the principle with great clearness. “ It is only in cases where the person advancing money to pay the debt of a third party stands in the situation of a surety, or is compelled to pay it to protect his own rights, that a court of equity substitutes him in the place of the creditor as a matter of course without any agreement to that effect. In other cases, the demand of a creditor, which is paid with the money of a third person, and without any agreement that the security shall be assigned or kept on foot for the benefit of such third person, is absolutely extinguished.”
The same doctrine will be found to be maintained in numerous other cases in the American courts. Hayes v. Ward, 4 Johns. Ch. R. 130; Banta v. Garmo, 1 Sandf. Ch. R. 384; Wilkes v. Harper, 1 Comst. 586; Swan v. Patterson, 7 Maryland R. 164. See also Copis v. Middleton, 1 Turner & Rus. 224; Hodgson v. Shaw, 3 Mylne & K. 183; Williams v. Owen, 12 Simons 597; Bowker v. Bull, 1 Simons, n. s. 29.
The complainant is clearly not in a position to claim the benefit of the principle which he invokes for his relief. He had no interest in the land subject to the mortgage for the protection of which it was necessary that he should pay tke mortgage debt. He was under no obligation to pay it, as surety or otherwise, out of his own funds; on the contrary it was his duty, as administrator of Cotton, to pay the debt out of that estate. He so understood his duty; for in the final settlement of his accounts as administrator, he charges himself with the entire proceeds of the sale, and claims credit for the payment of the mortgage debt out of the estate. If he chose to advance the mortgage debt out of .his own funds for the convenience of the purchaser, he was in a situation to require a new mortgage, or such other se *239 curity as he saw fit for his own protection. Having neglected to do so, he has no claim to protection in equity by being subrogated to the rights of the mortgagee.
The fact that the mortgage has not been satisfied of record will not alter the case. The evidence shows that the mortgage debt is extinguished. The holder of the mortgage neither assigned, nor agreed to assign the security. Upon the receipt of the money, he gave the administrator a receipt in full for the debt. But if the fact were otherwise, if the administrator held the bond and mortgage in his own hands undischarged and unassigned after the settlement of the estate of the intestate, this court would not interfere for his relief. It would be eminently dangerous to permit an administrator, after the settlement of an estate, to set up an uncancelled mortgage in his hands which it was his duty to have discharged, and which by his final settlement he alleges was discharged, as a subsisting encumbrance upon the title of the purchaser of the mortgaged premises, or those claiming under him.
Nor is the case aided by the fact, that the defendant was apprized at the time of his purchase of the claim of the complainant. Notice of an equitable lien will operate to charge the estate in the hands of the purchaser, but no notice will serve to render operative as an encumbrance a claim in itself inequitable.
With this view of the principle by which the case must be controlled and decided, it is unnecessary to determine the disputed questions of fact in the case. The facts have been assumed to be in accordance with the allegations of the complainant’s bill. Whether they have been established in evidence, is in no wise material to the rights of the parties.
The bill must be dismissed with costs.