FIRST DIVISION

March 15, 2004

No. 1-03-1445

PROGRESSIVE INSURANCE COMPANY, ) Appeal from the

) Circuit Court of

Plaintiff-Appellee, ) Cook County.

)

)

v. ) No. 01 CH 8329

)

)

UNIVERSAL CASUALTY COMPANY, ) Honorable

) Sophia H. Hall,

Defendant-Appellant. ) Judge Presiding.

JUSTICE GORDON delivered the opinion of the court:

This case arises from an auto accident in which Francisco Araujo hit a pedestrian, Luz Mendez, while delivering pizzas for a pizza vendor, Pizza Nova, Inc.  Araujo's vehicle was insured by defendant, Universal Casualty Company, while plaintiff, Progressive Insurance Company, provided insurance to Pizza Nova for its business automobiles.  Plaintiff Progressive settled a lawsuit filed by Mendez as a result of the accident for $57,500 and brought suit against defendant Universal for reimbursement.  Following cross-motions for summary judgment, the trial court granted summary judgment in favor of Progressive and denied Universal's motion.  The court awarded Progressive $20,000, Universal's policy limit for a single claimant.  Universal now appeals.  For the following reasons, we reverse and remand to the trial court for further proceedings.

BACKGROUND

On January 22, 1999, Luz Mendez was hit by a vehicle driven by Francisco Araujo.  The vehicle was owned by Francisco's father, Jose Araujo, and at the time he hit Mendez, Francisco was driving the vehicle in the course of his employment delivering pizza for Pizza Nova.  Jose carried insurance on his vehicle with defendant Universal, which provided $20,000 in liability coverage for a single claimant.
(footnote: 1)  Universal's policy also contained a provision providing for coverage of any person or organization legally responsible for the use of the insured automobile, which later became the basis for Progressive's contention that Pizza Nova was not only an insured of plaintiff Progressive, but an additional insured of defendant Universal.  Universal's policy further provided the following policy defenses under the section entitled "Conditions":

"5. *** The insured shall not, except at his own cost, voluntarily make any payment, assume any obligation or incur any expense other than for such immediate medical and surgical relief to others as shall be imperative at the time of accident.

* * *

6. *** No action shall lie against the company unless, as a condition precedent thereto, the insured shall have fully complied with all the terms of this policy, nor until the amount of the insured's obligation to pay shall have been finally determined either by judgment against the insured after actual trial or by written agreement of the insured, the claimant and the company." 

Pizza Nova was the named insured on a policy provided by plaintiff Progressive, which insured any automobiles used in the course Pizza Nova's business, but were not owned by Pizza Nova.  Progressive's policy provided a liability limit of $350,000 and contained the following "other insurance" provision:  "For any covered 'auto' you own, this Coverage Form provides primary insurance.  For any covered 'auto' you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance."

It appears from the record that both insurance companies were notified of the Araujo-Mendez accident and entered into negotiations with the underlying tort claimant Mendez to settle the case prior to her filing suit.  Those negotiations proved unsuccessful, and on January 17, 2001, Mendez filed a complaint naming Araujo and Pizza Nova as defendants.  While Pizza Nova was served with process regarding the lawsuit, Mendez was unable to serve the Araujos.  On May 1, 2001, Progressive, Pizza Nova's insurance carrier, settled the case with Mendez for $57,500.

Thereafter, Progressive filed a complaint for declaratory judgment in the circuit court, requesting a finding that Universal was the primary insurer of the Araujo vehicle and that Progressive was an excess insurance carrier.  Because of its alleged status as an excess carrier, Progressive requested an order directing Universal to reimburse Progressive for its settlement with Mendez.  Universal responded that its bodily injury liability limit on the Araujo policy was $20,000, but flatly denied any obligation to reimburse Progressive for its settlement.  Universal asserted that its obligation to cover any loss by Araujo was never triggered because two conditions precedent to its policy were not satisfied, namely: (1) the insured's obligation was not "finally determined" by written agreement between the insured, the claimant and the insurer or in a court of law and (2) Progressive's settlement was an unauthorized voluntary payment.

The parties subsequently filed cross-motions for summary judgment, responses, supplemental briefs and a second set of cross-motions for summary judgment.
(footnote: 2)
 In its motion for summary judgment, Progressive realleged that, as the primary insurer of the automobile, Universal was obligated to reimburse Progressive, the excess insurer, for its settlement with Mendez.  Progressive further asserted that Universal should be estopped from raising any policy defenses to coverage as it wrongfully declined to defend its insured in the underlying lawsuit when it was filed.  Attached to Progressive's motion was a copy of the coverage provisions under its policy, including the "other insurance" clause restated above.  Also attached to Progressive's motion was the following:  (1) a copy of an unnotarized letter from the underlying tort claimant's attorney, Paul Kesselman, addressed to Universal and Francisco Araujo, dated March 8, 1999, and titled "Notice of Attorney's Lien," stating that Kesselman was retained to represent Mendez for damages resulting from the January 22, 1999, accident; (2) a copy of a letter from Suzanne Weisman, a claims representative for Universal, acknowledging receipt of Kesselman's lien letter and responding that the matter was under investigation; (3) an unsigned letter from Denise Gracon, apparently an employee of Progressive,
(footnote: 3) to Universal, referencing a settlement demand from Mendez and requesting a complete copy of Universal's policy for review; (4) an unsigned letter from Lisa Anderson, apparently a second employee of Progressive,
(footnote: 4) addressed to Universal, stating that no response was received from the previous letter and requesting a determination regarding the Mendez matter. 

Universal's motion reasserted the two policy defenses recounted above and claimed that, although Progressive's attachments amounted to notice of an insurance claim, Universal never received notice of a lawsuit; therefore, its duty to defend the lawsuit never arose and Progressive's estoppel argument regarding Universal's policy defenses did not apply.  Universal further argued that Progressive was not an excess insurance carrier, but a co-insurer, and therefore it brought an improper action for reimbursement when it should have brought its action under the doctrine of equitable contribution.

Regarding the issue of whether Universal received notice of the filing of the underlying lawsuit, Universal submitted an affidavit signed by Paul Kesselman, averring that he never notified Universal of the lawsuit and that he was unable to serve the Araujos with summons.  The parties further submitted the conflicting affidavits of Brian Germain, an officer of defendant Universal, and Pamela Mausser, an officer of plaintiff Progressive.

Germain's affidavit provided that he was "familiar with the complete claims file for the claim by Luz Maria Mendez and Francisco and Jose Araujo and with the claims file for the claim by Progressive Insurance Company against Universal," and that he reviewed each of these files.  Germain admitted in his affidavit that Universal was aware of an insurance claim made by Mendez and that a claims adjuster "had preliminary settlement discussions with Paul Kesselman," Mendez' attorney.  However, Germain averred that after those preliminary discussions, Universal had no further contact with Kesselman and neither Kesselman nor the Araujos notified the company of a lawsuit.  Furthermore, even though there were several discussions between Universal and Progressive about the insurance claim, "at no time did Progressive ever inform Universal about a pending lawsuit" until the pleadings were filed by Progressive in its suit against Universal.
(footnote: 5)
 To the contrary, Mausser's affidavit stated the following, in pertinent part, "As reflected in the computer-generated notes attached hereto as Exhibit A, on February 14, 2001, we communicated to Suzanne Weisman, an adjuster for Universal Casualty, that a lawsuit was filed in this matter on January 31, 2001.  Ms. Weisman stated that Universal was not covering the loss because of an exclusion in their policy."

Ultimately, the court granted summary judgment in favor of Progressive, and denied Universal's motion.  The court determined that Universal had received sufficient notice of the underlying cause of action and that Progressive did not settle the underlying lawsuit prematurely.

On appeal, Universal contends that the trial court erred in granting Progressive's motion for summary judgment and in improperly denying Universal's motion for summary judgment.  We reverse the trial court's grant of summary judgment in favor of Progressive, but affirm the denial of Universal's motion.  Accordingly, we remand the cause of action for further consideration in the trial court.

ANALYSIS

Summary judgment is properly granted where the pleadings, depositions, admissions and affidavits show there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  735 ILCS 5/2-1005(c) (West 2002).  Presumably, when parties file cross-motions for summary judgment, they agree that no genuine issues of material fact exist and that the dispute involves only questions of law, which the court may decide based on the record.  
Home Insurance Company v. Cincinnati Insurance Co.
, 345 Ill. App. 3d 40, 44 (2003). 
 However, such a tacit  agreement among the parties does not compel the court to conclude that there is no issue of material fact, and it does not obligate the trial court to render summary judgment in either party's favor.  See 
Andrews v. Cramer
, 256 Ill. App. 3d 766, 769, 629 N.E.2d 133, 135 (1993).  The granting of a motion for summary judgment is reviewed 
de novo
.  
Crum and Forester Managers Corp. v. Resolution Trust Corp.
, 156 Ill. 2d 384, 390, 620 N.E.2d 1073, 1077 (1993).

Although the parties' briefs in this appeal primarily focus on the issue of whether Universal received actual notice of the underlying lawsuit, thereby triggering its duty to defend, there are several preliminary issues in this case which must first be addressed.  Universal and Progressive appear to disagree on the most basic issues of who is the insured at issue here -- Pizza Nova or Araujo -- and the relationship between the insurance companies -- excess/primary or co-primary.  Because Progressive's claim for reimbursement depends upon its ability to establish that it was an excess insurer that payments that should have been made by Universal, the primary insurer (see 
Schal Bovis, Inc. v. Casualty Insurance Co.
, 315 Ill. App. 3d 353, 360-61, 732 N.E.2d 1179, 1185 (2000)), and this alleged status as an excess insurer depends upon who is the insured, we address these two preliminary issues first.

In their briefs, the parties both set forth undeveloped assertions regarding to whom Universal owed coverage -- Araujo or Pizza Nova.  Generally, where an action for reimbursement is brought by one insurer, claiming to be an excess insurer, against an alleged primary insurer, both the excess and primary carriers must have contracted with the same insured.  See T. Hamilton & T. Stark, 
Excess-Primary Insurer Obligations and the Rights of the Insured
, 69 Def. Couns. J. 315 (2002) ("[i]n a typical excess-primary relationship, both the excess and primary carrier[s] contract independently with the policyholder to perform the obligations of their insuring agreements").  Although an action for recovery can be brought by one insurer against another insurer where the policies cover different insureds, such an argument is not based on the doctrine of reimbursement between excess and primary insurers.  Instead, such an action would require the establishment of a right to indemnity based on the doctrine of 
respondeat superior
 or based on the right of joint tortfeasors to bring legal actions against each other, each of which is derivative of the right of the respective insureds to seek recovery against each other.  
See 
Bituminous Casualty Corp. v. American Fidelity & Casualty Co., Inc.
, 22 Ill. App. 2d 26, 32, 159 N.E.2d 7, 10 (1959) (a tortfeasor "stands in the relation of indemnitor to a person who has been held legally liable, such as an employer under the rule of 
respondeat superior
, and the right to indemnity rests upon the principle that everyone is responsible for the consequences of his wrong and if another person has been compelled to pay the damages for which the wrongdoer is primarily responsible, the latter becomes liable to the former"); 15 Couch on Insurance Law 3d §217:16 (1999), citing 
Pacific National Insurance Co. v. Transport Insurance Co.
, 341 F.2d 514 (8th Cir. 1965) (an action may be brought by an insurer who was compelled to pay a judgment on behalf of its insured where its insured bore only vicarious liability for the underlying tort);
 15 Couch on Insurance Law 3d §217:4 (1999) (there might be a right to 
contribution
 where an insurer of a joint tortfeasor has paid greater than its share of a loss).  Because such an
 argument was not raised in this cause of action, we will not raise it for the parties, nor would we consider it for the first time on appeal.  See 197 Ill. 2d R. 341(e).

Instead, this action was filed as one based on reimbursement by an insurer claiming to be an excess carrier; therefore, recovery may only be had where the companies covered the same insured.  It is not in dispute that Progressive's policy covered only Pizza Nova and not Araujo.  Therefore Araujo, as the insured, cannot be the basis for this cause of action.  Instead, both parties agree that Pizza Nova was an insured of Progressive and Progressive urges that Pizza Nova was also an additional insured of Universal pursuant to its policy language stating that a person insured under its policy includes "Any other person or organization legally responsible for the use of *** an owned automobile."  See 
Bituminous Casualty Corp.
, 22 Ill. App. 2d at 31, 33-34, 159 N.E.2d at 10-11 (employee's insurance considered primary insurance for employer where omnibus provision covered any organization legally responsible for the use of the automobile).
  Because the parties do not contest that Pizza Nova was legally responsible for the use of the automobile and therefore an insured under Universal's policy, we will review this case treating Pizza Nova as the insured party.

The next issue then, is to determine the relationship between the two insurance companies as defined by their obligations to Pizza Nova.  As noted, the instant cause of action was brought as one for reimbursement.  Progressive asserted in its motion to the trial court and asserts before this court that it was an excess insurer of the automobile involved in the accident, while defendant Universal was the primary insurer, and therefore, Universal was primarily liable to Mendez, the underlying tort claimant.  Defendant Universal asserts that it and Progressive are co-primary insurers and, therefore, Progressive filed an improper cause of action for reimbursement instead of one based in equitable contribution, which would have been appropriate given their relationship as co-primary insurers. 

Equitable contribution is an insurer's right to recover from a co-obligor that shares the same liability.  
Fireman's Fund Insurance Co. v. Maryland Casualty Co.
, 65 Cal. App. 4th 1279, 1293, 77 Cal. Rptr. 2d 296, 303 (1998).  "Where multiple insurance carriers insure the same insured and cover the same risk, each insurer has independent standing to assert a cause of action against its coinsurers for equitable contribution when it has undertaken the defense or indemnification of the common insured."  
Fireman's Fund Insurance Co.
, 65 Cal. App. 4th at 1293, 77 Cal. Rptr. 2d at 303.  Such an action is based in equity and does not depend upon the contractual rights of the insured.

Equitable subrogation, on the other hand, refers to a situation where an insurer has paid the principal debtor's obligation to the common underlying claimant, and thereafter succeeds to the claimant's rights against the principal debtor.  
Fireman's Fund Insurance Co.
, 65 Cal. App. 4th at 1291, 77 Cal. Rptr. 2d at 302.  Because the action is based on subrogation, the insurer's rights are based upon the rights of its insured and cannot extend beyond those rights.  
Fireman's Fund Insurance Co.
, 65 Cal. App. 4th at 1292, 77 Cal. Rptr. 2d at 303.  This doctrine encompasses actions in which an excess insurer sues a primary insurer for reimbursement.  See 69 Def. Couns. J. at 318. 

A true excess insurance policy, however, explicitly requires the existence of a primary policy as a condition of coverage.  15 Couch on Insurance Law 3d §220:32 (1999).  Progressive is clearly not a true excess insurer in this case as there is no indication of such a condition in its policy, nor does it assert its excess status is based upon such a condition.  Instead, Progressive asserts that its status as an excess insurer is based upon its "other insurance" clause, which provided "For any covered 'auto' you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance."  Such clauses do not establish an insurer's status as excess over all other insurers as would a true excess insurance provision, but instead, are defined as an attempt to render primary insurance as excess over any other collectible insurance.  See D. Richmond, 
Rights and Responsibilities of Excess Insurers
, 78 Denv. U.L. Rev. 29, 103 (2000).  The difference between true excess coverage and excess "other insurance" clauses lies in the fact that where primary policies contain dueling excess "other insurance" clauses, they cancel each other out and any loss may be prorated between the companies as if they were co-primary insurers.  See 78 Denv. U.L. Rev. at 103.  Universal contends that this was the case here because its policy also contained an "other insurance" clause.  In this regard, Universal's policy provided "the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance."  Were we to find that both "other insurance" clauses apply to Pizza Nova in this case, the clauses would cancel each other out and the insurers would essentially be rendered co-insurers.  The proper cause of action would then be one based in equitable contribution and the loss could be prorated between the companies based on policy limits.  
Fireman's Fund
, 65 Cal. App. 4th at 1306, 77 Cal. Rptr. 2d at 312; see also 
Vitkus v. Beatrice Co.
, 127 F.3d 936, 946 (10th Cir. 1997).  To the contrary, were we to find that Progressive's "other insurance" clause rendered it an excess insurer, the proper theory of recovery would be based in equitable subrogation (see, 
e.g.
, 
Schal Bovis
, 315 Ill. App. 3d at 363, 732 N.E.2d at 1187 ("[i]n Illinois, an excess insurer cannot seek equitable contribution from a primary insurer because excess carriers and primary carriers insure different risks")) and the insured would be required to exhaust its primary insurance prior to using its excess coverage (see 
United States Gypsum Co. v. Admiral Insurance Co.
, 268 Ill. App. 3d 598, 654, 643 N.E.2d 1226, 1262 (1994)).

With these principles in mind, we now turn to the language of the "other insurance" clauses in the policies at issue to determine whether they were both applicable.  As previously stated, Universal's policy provided "the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance."  Universal argues that its "other insurance" clause applied to Pizza Nova because the automobile involved in the accident was not owned by Pizza Nova, but by Araujo.  However, in its "Definitions" section, Universal's policy defined a non-owned automobile as "an automobile not owned by or furnished for the regular use of either the named insured or any relative."  There is no question that the named insured on Universal's policy was Araujo.  As a result, according to its own definition, the term "non-owned automobile" in Universal's "other insurance" clause did not refer to an automobile not owned by Pizza Nova, but an automobile not owned by the named insured, Araujo or one of his covered relatives.  Accordingly, Universal's "other insurance" clause does not apply in this case.  

We must next determine whether Progressive's other insurance clause applies in this case, thereby rendering it an excess insurer.  Again, Progressive's policy provided "For any covered 'auto' you don't own, the insurance provided by this Coverage Form is excess over any other collectible insurance."  According to its own language, the other insurance referred to by this clause must be "collectible" before Progressive's coverage will be considered excess.

Universal's argument, that the insured did not comply with certain conditions precedent to triggering coverage, is pertinent to this question of whether Universal's insurance was collectible, thereby rendering it primary and Progressive's coverage excess.  See 15 Couch on Insurance Law 3d §219:9 (1999) (a policy that never came into effect due to the failure to meet certain preconditions to coverage is not valid and collectible "other insurance").  As previously stated, the conditions that Universal argues were not fulfilled, thereby rending its insurance not collectible, included its prohibition of voluntary payments on the part of the insured and the provision that no action shall lie against Universal until the amount of the insured's obligation is established by judgment after trial or by written agreement between the claimant, the insured, and the insurer.  Progressive responds to this argument by asserting that Universal is estopped from raising these policy defenses because it improperly refused to defend its insured in the underlying lawsuit.  Universal, on the other hand, contends that it should not be estopped from asserting these defenses because it never received actual notice of the underlying lawsuit, as asserted in Germain's affidavit.

An insurer's duty to defend its insured in a lawsuit arises when: (1) the allegations in the underlying tort complaint potentially fall within the policy's coverage provisions, and in addition (2) the insurer has actual notice of the underlying lawsuit.  
Cincinnati Companies v. West American Insurance Co.
, 183 Ill. 2d 317, 323, 329, 701 N.E.2d 499, 502, 505 (1998).  In general, when the insurer wishes to contest coverage where its policy includes a duty to defend, it must either defend the suit under a reservation of rights or seek a declaratory judgment that there is no coverage.  
Employers Insurance of Wausau v. Ehlco Liquidating Trust
, 186 Ill. 2d 127, 150, 708 N.E.2d 1122, 1134-35 (1999).  Where the insurer fails to do either of these things and is subsequently found to have wrongfully denied coverage, it is estopped from raising any policy defenses to coverage.  
Employers Insurance of Wausau
, 186 Ill. 2d at 150-51, 708 N.E.2d at 1135.  This estoppel doctrine does not apply, however, when the insurer had no duty to defend or if its duty to defend was not properly triggered.  
Employers Insurance of Wausau
, 186 Ill. 2d at 151, 708 N.E.2d at 1135.  Accordingly, whether a party is estopped from asserting any policy defenses rests upon the previously stated conditions precedent to triggering a duty to defend -- whether the insurer had actual notice of the underlying lawsuit and whether the allegations in the underlying tort complaint potentially fell within the policy's coverage provisions.  
Cincinnati Companies
, 183 Ill. 2d at 323, 329, 701 N.E.2d at 502, 505.

The condition specifically at issue in this case is whether defendant Universal had actual notice of the underlying tort action.  An insurance company is deemed to have actual notice of a lawsuit where that notice sufficiently permits the insurer to locate and defend the lawsuit.  
Cincinnati Companies
, 183 Ill. 2d at 329, 701 N.E.2d at 505.  "[I]n order to have actual notice sufficient to locate and defend a suit, the insurer must know both that a cause of action has been filed and that the complaint falls within or potentially within the scope of the coverage of one of its policies."  
Cincinnati Companies
, 183 Ill. 2d at 329-30, 701 N.E.2d at 505.  Such notice need not take the form of a direct request to the insurer to provide a defense to the insured; however, the insurer must be aware through whatever source that a cause of action has been filed.  See 
Cincinnati Companies
, 183 Ill. 2d at 324-328, 701 N.E.2d at 502-505.

In this case, there is clearly a factual dispute over this issue, which rendered it inappropriate for determination at the summary judgment stage of proceedings.  In support of their cross-motions for summary judgment, each party submitted supporting documents and affidavits to the trial court.  See 
Kolakowski v. Voris
, 83 Ill. 2d 388, 398, 415 N.E.2d 397, 402 (1980) (in support of a motion for summary judgment, a party may submit the pleadings, depositions, admissions on file, and affidavits).  Specifically regarding the issue of notice, Universal provided the affidavit of Brian Germain, which stated that he reviewed the claim files related to the underlying tort action and, although Universal was aware of the insurance claim made by Mendez, the company did not know a lawsuit had been filed.  Germain conceded that Universal had preliminary discussions with Kesselman and subsequently with Progressive; however, neither of them informed the company about a lawsuit.  To the contrary, Progressive submitted the affidavit of Pamela Mausser, which stated that, according to an attached computer-generated note, Progressive gave Universal notice on February 14, 2001, that a lawsuit had been filed on January 31, 2001.

Clearly, the assertions in these affidavits conflict.  See 
Kolakowski
, 83 Ill. 2d at 398, 415 N.E.2d at 402 (because there is no indication that either party attacked the sufficiency of the affidavits in the trial court, any issues in this regard would be waived).  Where affidavits submitted in support of motions for summary judgment contradict one another, a question of fact is raised and summary judgment is  not appropriate.  
Wood v. National Liability & Fire Insurance Co.
, 324 Ill. App. 3d 583, 585, 755 N.E.2d 1044, 1047 (2001) (if rational persons could draw different inferences from those facts, summary judgment is inappropriate).  Accordingly, because the conflicting affidavits in this case raised an issue of fact regarding whether Universal had actual notice that the lawsuit was filed, and actual notice is vital to an assertion that a party be estopped from raising policy defenses, such as those raised by Universal here, summary judgment should not have been granted.  See 
e.g.
 
Employers Insurance of Wausau
, 186 Ill. 2d at 143, 708 N.E.2d at 1131 (referring to whether an insurer had actual notice a lawsuit had been filed as a "factual issue").

Following a determination by a trier of fact as to whether there was actual notice, it may then be ascertained whether Universal's policy defenses apply and whether its insurance was "collectible," thereby rendering Progressive's coverage excess.  If there was no notice, Universal would be entitled to raise the substantive defenses provided in its policy, and no notice in itself would in all likelihood constitute a valid defense under those policy provisions.  The policy provided that where a claim is made or suit is brought against an insured, the insured must provide to Universal every demand, notice, summons or other process received by him/her and that Universal must receive actual notice of a suit before judgment is entered.  Lack of notice, therefore, would not only exculpate Universal from being estopped to raise any other substantive defenses under the policy (see 
Employers Insurance of Wausau
, 186 Ill. 2d at 150-51, 708 N.E.2d at 1135), but would in all likelihood constitute a valid defense in and of itself, thereby precluding recovery and certainly precluding the insurance from being deemed collectible so as to prohibit Progressive from being placed in the position of an excess carrier.

If there was actual notice, however, then the doctrine of estoppel would apply to preclude Universal from asserting substantive policy defenses to defend any action brought by Progressive as subrogee to the rights of the insured, Pizza Nova.  It would not appear, however, that Universal would in any event be estopped from raising the defense that Progressive's payment was voluntary, thereby precluding Progressive from recovering as a subrogee.  See 
United States Gypsum Co.
, 268 Ill. App. 3d at 635, 643 N.E.2d at 1249 (a settling insured may not be acting a mere volunteer); 
Argonaut Insurance Co. v. Allstate Insurance Co.
, 869 S.W.2d 537, 542 (Tex. Ct. App. 1993) (the two key elements of equitable subrogation are that (1) the party on whose behalf the claimant discharged the debt was primarily liable, and (2) the claimant paid the debt involuntarily).  The defense of voluntariness in response to a claim based in equitable subrogation operates independently under general subrogation principles, apart from any policy defenses that would be barred under the estoppel doctrine where the insurer breached its duty to defend.  It is a defense which would prevent a volunteer under general subrogation principles from stepping into the shoes of the subrogor.  See
 
Bennett v. Chandler
, 199 Ill. 97, 104, 64 N.E. 1052, 1054 (1902); 
Shinn v. Budd
, 14 N.J. Eq. 234, 236-37 (1862) ("[s]ubrogation as a matter of right *** is never applied in aid of a mere volunteer"); 
In re Marriage of Milliken
, 199 Ill. App. 3d 813, 819, 557 N.E.2d 591, 595 (1990) (the voluntary payment of a debt will not "confer upon the payor the status of subrogee").  It has its origin in the old equitable maxim that equity does not favor volunteers.  
Neves v. Scott
, 50 U.S. 196, 
209,
 13 L. Ed. 102,
 107 (1850) (a court of equity will not interpose in favor of a volunteer); 
Merrimac Mining Co. v. Gross
, 216 Minn. 244, 253, 12 N.W.2d 506, 511 (1943)
 ("[e]quity will not aid a volunteer").  For this reason, as in any case involving equitable subrogation, the defense of voluntariness should be available to an insurer, in this case Universal, even if that insurer were otherwise estopped from raising any of the substantive defenses delineated in its insurance policy.  Only after stepping into the shoes of the subrogor, namely its insured, would the estoppel doctrine operate to bar the assertion by the insurer of any policy defenses it would otherwise have against its insured where the insurer breached its duty to provide the insured with a defense.  It does not stand to reason, however, that the estoppel doctrine, designed to protect the insured, would also operate to protect the insurer so as to enable it to step into the shoes of the insured even where, as a volunteer, it would otherwise have been precluded from doing so.  Once an insurer such as Progressive becomes a subrogee, it makes sense to extend to it derivatively the benefit of the estoppel doctrine which would be available to the insured who is its subrogor.  However, there is no basis upon which to presume that the estoppel doctrine can be deployed by an insurer who is a volunteer to permit him to step into the shoes of the insured in the first instance, so as to then be in a position to derivatively assert the rights of the insured as it subrogor, where as a volunteer he would be precluded from so doing under general subrogation principles.  See 
Aetna Life Insurance Co. v. Town of Middleport
, 124 U.S. 534, 
549
,
 
31 L. Ed. 537,
 542, 
8 S. Ct. 625, 
630 
(1888
) (" 'The doctrine of subrogation is not applied for the mere stranger or volunteer, who has paid the debt of another, without any assignment or agreement for subrogation, without being under any legal obligation to make the payment, and without being compelled to do so for the preservation of any rights or property of his own' "), quoting H. Sheldon, Subrogation §2400.

In considering whether Progressive's payment was voluntary, we note that the courts are sympathetic to excess insurers in determining whether payments made were under sufficient obligation to allow the insurer to seek subrogation, as excess insurers are often potentially liable on a claim, while unable to determine their actual liability until late in a dispute.  16 Couch on Insurance Law 3d §223:32 (1999); see also 
Weir v. Federal Insurance Co.
, 811 F.2d 1387, 1394 (10th Cir. 1987) (an excess carrier's payment on behalf of a primary carrier is presumptively involuntary); 
Argonaut Insurance Co.
, 869 S.W.2d at 543.  Therefore, an excess insurance carrier must have the right to step in and settle a claim where its interest in capping its own liability is potentially at stake.  See 16 Couch on Insurance Law 3d §§223:25, 223:27 (1999) (a payment on behalf of one primarily liable must be made for the protection of the insurer's interest in discharging a liability); see also 44A Am. Jur. 2d 
Distinction from assignment; requirement of involuntary payment
 §1771 (2003).  However, the considerations affecting the voluntariness of a settlement, such as whether an excess insurer's anticipation of liability was reasonable and whether the settlement was arrived at in good faith, are, like the issue of notice, questions of fact not appropriately determined at the summary judgment stage of the proceedings.  See, 
e.g.
, 
St. Paul Fire & Marine Insurance Co. v. Michelin Tire Corp.
, 12 Ill. App. 3d 165, 171, 298 N.E.2d 289, 293 (1973); 
Weir
, 811 F.2d at 1394.  As a result, the voluntariness of Progressive's payment must also be considered by a trier of fact.

Accordingly, the judgment of the circuit court granting Progressive's motion is reversed, its denial of Universal's motion is affirmed, and the cause is remanded for further proceedings consistent with this opinion.

Reversed and remanded.

O'MALLEY, P.J. and McNULTY, J. concur.

FOOTNOTES
1:
Defendant Universal has not provided this court with the declarations referred to in its form, which would provide the name of each insured and the specific coverage supplied to each named insured.  As a result, this number is taken from the parties' briefs.

2:
Initially, the trial court granted Universal's motion for summary judgment and denied Progressive's motion, finding that Universal's duty to defend the Araujo suit never arose and therefore there was no duty to indemnify or reimburse Progressive.  In a motion to reconsider the court's ruling, Progressive asserted that Pizza Nova was actually an insured of defendant Universal, and, therefore, it had a duty to defend Pizza Nova.  The court granted Progressive's motion to reconsider, vacated its initial ruling, and denied both motions for summary judgment without prejudice.  The parties then refiled their motions for summary judgment.

3:
Because neither party disputes the assertion, we assume that Denise Gracon and Lisa Anderson are employees of plaintiff Progressive, even though the letters referenced herein and that referenced under footnote 4 below are not on letterhead, do not display a company name and are not signed.

4:
See footnote 3 above.

5:
Universal submitted three affidavits from Germain to the trial court.  The affidavit discussed here was the second one submitted.  Germain's third affidavit, filed with Universal's motion to reconsider, primarily added that when an adjuster receives information that a lawsuit has been filed, it is the business practice at Universal to "to bring the file to the immediate attention of George Fuchs, Joe Fitzgerald or myself," and that detailed notes and records were made of any action taken.  It further stated that the Mendez file was never brought to his attention, there were no notes indicating it was brought to Fuchs or Fitzgerald's attention, and there were "no notes or records that Universal received notice of the underlying lawsuit."