2004 SD 124

**NATIONAL FARMERS UNION PROP-
ERTY AND CASUALTY COMPA-
NY, Plaintiff and Appellant,**

v.

**FARM AND CITY INSURANCE
COMPANY, Defendant and
Appellee.**

Nos. 23192, 23199.

Supreme Court of South Dakota.

Argued Oct. 6, 2004.

Decided Nov. 17, 2004.

**620**

Roy A. Wise of Richardson, Wyly, Wise, Sauck & Hieb, Aberdeen, SD, for plaintiff and appellant.

Melissa E. Neville of Bantz, Gosch & Cremer, Aberdeen, SD, for defendant and appellee.

MEIERHENRY, Justice.

[¶ 1.] This is a case of first impression in South Dakota. National Farmers Union Property and Casualty Company [NFU] filed a declaratory judgment action requiring the trial court to determine the relative priority between an umbrella insurance policy and a primary insurance policy with an "other insurance" clause. The trial court determined the policies were mutually repugnant and each insurer was required to pay its pro rata share of the damages. We reverse.

## FACTS

[¶ 2.] On January 16, 1999, Gene Fredrickson [the driver] was involved in a serious motor vehicle accident while permissively driving a pickup owned by Larry Lorenzen. The accident was caused by the driver's negligence. The six occupants in the other vehicle were injured, two of them seriously.

[¶ 3.] At the time of the accident, the driver was covered by a "Personal Auto Policy" issued by Farm & City Insurance Company. This policy provided liability limits of $25,000 per person and $50,000 per accident and covered the insured when permissively driving a non-owned vehicle. The owner of the vehicle was covered by two separate policies issued by NFU. The first was a "Private Passenger Automobile" policy with liability limits of $250,000 per person and $500,000 per occurrence. The second was a "Personal Umbrella Policy" which provided an additional $1,000,000 of liability coverage.[1] The permissive driver was covered as an "addi-

---

1. As a condition to issuing the umbrella policy, the insured was required to have certain amounts of underlying coverage.

tional insured" under both the NFU primary policy and the NFU umbrella policy.

[¶ 4.] The vehicle owner's insurance company, NFU, settled the claims resulting from the accident for a total of $735,000. This was $235,000 in excess of the vehicle owner's primary policy limit. NFU paid the settlement amount in full, and then brought a declaratory judgment action seeking reimbursement from Farm & City in the amount of $50,000, the limit of the driver's Farm & City policy. Farm & City maintained that it was not liable because its policy was last in priority. In the alternative, Farm & City asserted that if it were liable, it would only be liable for its pro rata share of the excess settlement, which would be $11,186. Farm & City also asserted that because NFU settled on its own and paid the entire claim, NFU was a volunteer, thus eliminating its right to contribution. The trial court ruled NFU was not a volunteer. The court determined the policies were mutually repugnant and required Farm and City to pay its pro rata share of the excess settlement amount. Neither party was awarded costs or disbursements. NFU appeals.

## STANDARD OF REVIEW

[¶ 5.] The evidence presented to the trial court consisted of contract documents and stipulated facts. Thus, "we confine our review to determining whether the circuit court correctly applied the law and properly interpreted the contracts." *Carstensen Contracting, Inc. v. Mid–Dakota Rural Water System, Inc.*, 2002 SD 136, ¶ 8 n. 2, 653 N.W.2d 875, 877. The circuit court's conclusions of law are reviewed de novo. *Parks v. Cooper*, 2004 SD 27, ¶ 20, 676 N.W.2d 823, 829. Additionally, construction of an insurance contract is a question of law, reviewable de novo. *Mahan v. Avera St. Luke's*, 2001 SD 9, ¶ 15, 621 N.W.2d 150, 154.

## ISSUE

Whether the trial court erred in determining the insurance policies were mutually repugnant and ordering Farm & City to contribute its pro rata share of the settlement amount.

## DECISION

*Mutual Repugnance and Assignment of Pro Rata Liability*

[¶ 6.] We have not previously decided the issue of priority between an umbrella insurance policy and a primary insurance policy with an "other insurance" clause. The parties do not dispute that the primary coverage insurance policy of the vehicle owner must be exhausted first. Thus, the first $500,000 of the settlement amount was paid under that policy. The dispute is over which policy must next be applied to the $235,000 of the settlement amount remaining.

[¶ 7.] The negligent driver had an auto policy with a $50,000 per accident limit, which would cover him in the event he caused injury as the permissive driver of another's vehicle. However, the policy stated, "[A]ny insurance we provide for a vehicle you do not own *shall be excess over any other collectible insurance.*" (Emphasis added.) The owner of the vehicle had an umbrella policy with a $1,000,000 limit. His policy stated, "If a covered person has other collectible insurance that covers damages which this policy also covers, this policy *shall be excess to and will not contribute with such other insurance. This does not include insurance bought to apply in excess of the retained limit plus the limit of liability of this policy.*" (Emphasis added.) Each of the policies requires that other collectible insurance be exhausted before it will pay. We are being asked

to decide how this apparent impasse should be resolved.

[¶ 8.] There are three possible resolutions to this problem. The first is to interpret the policies as requiring the umbrella policy to be exhausted before looking to the non-owner driver's liability coverage. *See Unigard Ins. Group v. Royal Globe Ins. Co.*, 100 Idaho 123, 594 P.2d 633 (1979). The second is to find the policies to be mutually repugnant and render each insurer liable for a pro rata share of the remaining damages owed. *See Royal Indem. Co. v. Metro. Cas. Ins. Co. of N.Y.*, 80 S.D. 541, 128 N.W.2d 111 (1964) (applying pro rata liability where two *primary* liability policies were mutually repugnant). The third is to interpret the policies as requiring the non-owner's liability policy to be exhausted before looking to the owner's umbrella policy. *See LeMars Mut. v. Farm & City Ins.*, 494 N.W.2d 216 (Iowa 1992). The parties agree that a majority of courts in this country follow the third approach and require the non-owner's liability policy to be exhausted before looking to the umbrella policy. *See* Michael P. Sullivan, J.D., LL.M., Annotation, *Automobile Insurance: Umbrella or Catastrophe Policy Automobile Liability Coverage As Affected By Primary Policy "Other Insurance" Clause*, 67 A.L.R.4th 14 (1989). This Court hereby adopts the majority rule.

[¶ 9.] As a general rule, in a dispute over the relative priority of insurance policies, the language of the policies is determinative. *See Am. Concept Ins. Co. v. Certain Underwriters at Lloyds of London*, 467 N.W.2d 480, 482 (S.D.1991). The trial court determined the excess coverage provisions of the policies were mutually repugnant. The court then determined that both insurance companies were liable on a pro rata basis according to South Dakota caselaw. *See Royal Indem.*

*Co.*, 80 S.D. at 546–47, 128 N.W.2d at 113–14. Although a finding that the policies were mutually repugnant was not unreasonable, we look here to the policies and their purposes as a whole. "This court must construe all provisions of the policy together and ascertain the intention of the parties, if possible." *Helmbolt v. LeMars Mut. Ins. Co., Inc.*, 404 N.W.2d 55, 59 (S.D.1987). In doing so, we conclude that only the NFU umbrella policy is a true excess policy and is, therefore, last in priority of payment.

[¶ 10.] In arriving at this conclusion, we first examine the language of the excess insurance clauses of the respective policies. The clause in the NFU umbrella policy states as follows:

4. Other insurance.

If a covered person has other collectible insurance that covers damages which this policy also covers, this policy shall be excess to and will not contribute with such other insurance. *This does not include insurance bought to apply in excess of the retained limit plus the limit of liability of this policy.* (Emphasis added.)

The clause in the Farm & City policy states:

Other insurance

If there is other applicable liability insurance we will pay only our share of the loss. Our share is the proportion that our limit of liability bears to the total of all applicable limits. *However, any insurance we provide for a vehicle you do not own shall be excess over any other collectible insurance.* (Emphasis added.)

[¶ 11.] Farm & City points to the NFU umbrella policy language which excludes another policy "bought to apply in excess of the retained limit plus the limit of liability of this policy." Farm & City argues

that this clause requires the exhaustion of the limits of both NFU's primary and umbrella policies before Farm & City would become liable. A closer look at the NFU umbrella policy does not support Farm & City's premise. Clearly, the first part of the "Other Insurance" clause in the NFU umbrella policy makes it an excess policy when "a covered person has other collectible insurance that covers damages which this policy also covers." The exception is when insurance is purchased "to apply in excess of the retained limit plus the limit of liability" of NFU's umbrella policy. The applicable policy definition of "retained limit" is the limit of the "required underlying insurance" plus "any other insurance available to a covered person." Consequently under NFU's policy terms, Farm & City would only be last in priority if the policy were specifically purchased to apply over and above the underlying liability policy plus the umbrella policy. Farm & City is unable to show by contract language or otherwise that its primary coverage policy was purchased for the purpose of liability in excess of another's primary and umbrella coverage. As stated by the Colorado Court of Appeals concerning a very similar provision, "the intent of the language of the proviso cannot accurately be divined without recognizing that there has been developed a tertiary level of liability insurance, sometimes referred to as 'secondary excess coverage.'" *Allstate Ins. Co. v. Frank B. Hall & Co. of California*, 770 P.2d 1342, 1347 (Colo.Ct.App. 1989) (citing *Lumbermens Mut. Cas. Co. v. Allstate Ins. Co.*, 51 N.Y.2d 651, 435 N.Y.S.2d 953, 417 N.E.2d 66 (1980)). The Colorado court concludes that the exception proviso "refers to a third tier of insurance that treats the umbrella coverage as underlying insurance and specifically refers to that coverage." *Id.*

[¶ 12.] The plain meaning of the NFU proviso in this case refers to this third tier

of insurance. Unless some other insurance was purchased for the specific purpose of covering amounts in excess of the umbrella policy coverage, the umbrella policy is true excess coverage and "will not contribute with such other insurance." Here the Farm & City personal auto policy was purchased by the driver to provide primary liability coverage and was only excess if another insurance covered the damage. The policy was not purchased as a secondary excess umbrella policy. Only the vehicle owner's personal umbrella policy was intended to be a true excess insurance policy.

[¶ 13.] In addition to the contract language, the premiums paid for the policies also indicate which policy is the "umbrella or true excess insurance policy." *See Am. Concept Ins. Co.*, 467 N.W.2d at 483. Here, the $1,000,000 NFU umbrella policy premium was $211 annually while the $50,000 Farm & City auto policy premium was $108 for two months of coverage. In addressing this same issue, the Iowa Supreme Court ruled against Farm & City. *See LeMars Mut. Ins. Co.*, 494 N.W.2d 216. The Iowa court analysis is instructive:

The "umbrella" nature of the LeMars Mutual policy is clear from the policy title, "Personal Excess and Catastrophe Liability Policy," its terms which provide that liability coverage will be in excess in nearly all cases, and the premium paid. [Appellee's insured] paid a yearly premium of only $120 for excess coverage of $1,000,000 over his primary coverage.

Appleman stated the majority rule on this issue: "[U]mbrella coverages, almost without dispute, are regarded as true excess over and above any type of primary coverage, excess provisions arising in regular policies in any man-

ner, or escape clauses." [8A Appleman *Insurance Law and Practice* § 4909.85, at 455 (1981).] We believe that resolution of the question of priority in payment must come, as the majority rule indicates, from a common sense look at the basic function each policy was intended to serve. Competing "other insurance clauses" in the Farm & City and LeMars Mutual policies, which normally would invoke contract construction rules, must yield to a finding of the insurance policies' main functions.

We are further persuaded to find the umbrella policy the true excess insurer in this case by the great weight of authority so holding in other jurisdictions which have considered the question. *See, e.g., Allstate,* 770 P.2d [1342] at 1342; *Illinois Emcasco Ins. Co. v. Continental Casualty Co.,* 139 Ill.App.3d 130, 93 Ill.Dec. 666, 487 N.E.2d 110 (1985); *State Farm Fire & Casualty Co. v. Li Mauro,* 65 N.Y.2d 369, 492 N.Y.S.2d 534, 482 N.E.2d 13 (1985); *Safeco Ins. Co. v. Insurance Co. of North America,* 522 S.W.2d 867 (Tenn. 1975); *see also Umbrella Policy–Other Insurance,* 67 A.L.R.4th § 4 at 14.

The insuring intent of the LeMars Mutual umbrella insurance policy is to provide excess insurance in cases such as this. A primary insurance provider cannot hide behind an excess insurance clause in its "other insurance" provision to require an umbrella insurer to cover liability for its insured. We hold that Farm & City's primary insurance policy must be exhausted before the umbrella policy of LeMars Mutual may be reached for payment of the settlement damages.

*Id.* at 219. The Eighth Circuit Federal Court of Appeals in addressing this issue stated the applicable rule succinctly: "[A]n insurer that issued a "true excess" or "um-brella" policy is not liable for any portion of the loss until the primary insurer's policy limit has been exhausted, even if the primary policy contains an other-insurance clause." *National Sur. Corp. v. Ranger Ins. Co.,* 260 F.3d 881, 884 (8thCir.2001) (applying Iowa law).

[¶ 14.] The trial court erred in finding the policies mutually repugnant. Here, the "true excess" or "umbrella" policy is the NFU policy.

*Volunteer*

■ [¶ 15.] Farm & City argues that NFU should be precluded from seeking contribution because NFU's payment of the full amount of the claim was voluntary. Farm & City cites *American Reliable Ins. Co. v. St. Paul Fire & Marine Ins. Co.,* 79 S.D. 226, 110 N.W.2d 344, (1961), in support of this argument. The following is the explanation of the "volunteer" principle taken from that case:

> It appears well settled that there is no right of contribution among insurers whose policies as in the instant case contain pro rata clauses limiting liability. ... [I]f each of several insurers contracts to pay such proportion of the loss to result from the destruction of the insured premises as the amount insured by such insurer bears to the whole insurance effected on the property, none of them has any right to contribution from the others, nor will the payment of the whole loss by any of them discharge the liability of the others, for in such a case the contracts are independent of each other ... [.]
>
> ....
>
> ... [I]n case of concurrent insurance an insurer paying more than its share of the loss for which all insurers are liable, may compel contribution. The reason for a different rule in case of pro rata or coinsurance is thus stated: But in the different policies concerned in this case

there is no concurrent liability. Each insurer, by the distinct terms of his contract, makes himself liable for a certain and definite fractional part of the loss, to be calculated in the manner stipulated in the policies.

*Id.* at 230–231, 110 N.W.2d 344 (internal citations omitted). In the instant case, there is no pro rata provision in the NFU umbrella policy, thus the volunteer argument offered by Farm & City is inapplicable. In addition, the volunteer principle described above applies in cases of contribution. As explained below, the equitable reimbursement being sought here is actually subrogation, rather than contribution.

*Equitable Contribution verses Equitable Subrogation*

■■■■■ [¶ 16.] NFU has never denied that both its primary policy and umbrella policy covered this risk and that it would have to pay a significant portion of the damages, and NFU accepted this responsibility. The trial court's declaratory judgment found that before NFU settled the claim, it put Farm & City on notice that it would be seeking contribution. Farm & City maintained that it was not liable because its policy was last in priority. Based on the stipulated facts of this case, the trial court ruled that the parties were only concurrently liable and applied the doctrine of equitable contribution as the ground for NFU's reimbursement from Farm & City. However, this Court has found that Farm & City was primarily liable in relation to the NFU umbrella policy. "It is well settled that one secondarily liable, who is forced to pay because of

the refusal, or failure after demand, of the one primarily liable to discharge the obligation, has the right of indemnity from the one primarily liable." *Maryland Cas. Co. v. American Family Ins. Group of Madison, Wis.*, 199 Kan. 373, 385, 429 P.2d 931, 941 (1967) (citing *Aetna Cas. & Sur. Co. v. Buckeye Union Cas. Co.*, 157 Ohio St. 385, 392, 105 N.E.2d 568, 571–72). Consequently, equitable contribution is not the appropriate ground for relief under the circumstances of this case.[2] However, since Farm & City was, in fact, primarily liable, the doctrine of equitable subrogation is the appropriate ground for reimbursement.

■■■■■ [¶ 17.] Equitable subrogation applies when "an insurer has paid the principal debtor's obligation to the common underlying claimant, and thereafter succeeds to the claimant's rights against the principal debtor.... This doctrine encompasses actions in which an excess insurer sues a primary insurer for reimbursement." *Progressive Ins. Co. v. Universal Cas. Co.*, 347 Ill.App.3d 10, 19, 282 Ill.Dec. 953, 961, 807 N.E.2d 577, 585 (2004) (citing T. Hamilton & T. Stark, *Excess–Primary Insurer Obligations and the Rights of the Insured*, 69 Def. Couns. J. 315, 318 (2002)); *See also Church Mut. Ins. Co. v. Smith*, 509 N.W.2d 274, 276–77 (S.D.1993) (discussing excess insurer's recovery of attorney's fees from primary insurer by subrogation). Accordingly, NFU is entitled to recover under the equitable remedy of subrogation.

**2.** Where courts have recognized equitable contribution between co-insurers they have required that the interests insured must be common to both insurers. *See Great West Cas. Co. v. Canal Ins. Co.*, 901 F.2d 1525, 1527 (10thCir.1990); *Am. States Ins. Co. v. Hartford Accident & Indem. Co.*, 218 Kan. 563, 571, 545 P.2d 399, 407 (1976). It is generally held that excess and primary insurers do not have the common interest required. *See Cincinnati Ins. Co. v. River City Const. Co.*, 325 Ill.App.3d 267, 274, 258 Ill. Dec. 987, 993, 757 N.E.2d 676, 682 (2001) ("it is well established that excess insurers cannot seek equitable contribution from primary insurers").

[¶ 18.] We hold that NFU is entitled to reimbursement in the amount of the Farm & City policy limits. Therefore, we reverse and remand for the trial court to enter a judgment in favor of NFU in the amount of $50,000 plus interest. In addition, as the prevailing party NFU is entitled to costs and disbursements under SDCL 15–17–37.

[¶ 19.] GILBERTSON, Chief Justice, and SABERS, KONENKAMP, and ZINTER, Justices, concur.